**John B. BRECKINRIDGE et al., Appellees,**

**v.**

**Donald H. RUMSFELD et al., Appellants.**

**No. 75–2505.**

United States Court of Appeals, Sixth Circuit.

Argued March 31, 1976.

Decided July 9, 1976.

Rehearing Denied Aug. 13, 1976.

Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., Eldon L. Webb, Peter R. Taft, Edmund B. Clark, Kathryn A. Oberly, Dept. of Justice, Brian O'Neill, Dept. of Army, Washington, D. C., for appellants.

Bert T. Combs, Tarrant, Combs & Bullitt, Louisville, Ky., W. Terry McBrayer, Lexington, Ky., Glenda J. Beard, Louisville, Ky., Julius E. Rather, Lexington, Ky., for appellees.

Before PHILLIPS, Chief Judge, and CELEBREZZE and MILLER,* Circuit Judges.

* Judge William E. Miller died April 12, 1976, and did not participate in the decision in this case.

PHILLIPS, Chief Judge.

The question presented on this appeal involves the breadth to be given to the term "human environment" as used in the National Environmental Policy Act (NEPA). 42 U.S.C. § 4321, et seq. Specifically, does action by the United States Army which reduces jobs and transfers personnel from the Lexington-Bluegrass Army Depot (LBAD) to depots in California and Pennsylvania constitute "a major Federal action significantly affecting the quality of the human environment," within the meaning of 42 U.S.C. § 4332(C)?

The District Court enjoined the Army from proceeding with the proposed transfer until a formal environmental impact statement has been prepared and circulated. We hold that the District Court was in error in undertaking to transform NEPA from a law designed to protect and enhance the natural resources of the nation into a statute prohibiting the discharge and transfer of personnel at an army installation, and that it was not the intention of Congress for NEPA to be used for purposes of promoting full employment or to prevent the discharge or transfer of federal personnel. We conclude that the injunction must be dissolved and the decision of the District Court requiring an environmental impact statement must be reversed with directions to the District Court to dismiss the suit.

On November 22, 1974, the Secretary of Defense announced 111 actions involving realignment of units and closures of particular bases. One of the actions affected LBAD to the extent that 18 military and 2,630 civilian jobs would be eliminated in the Lexington area. The Army prepared an environmental assessment which concluded that because there was to be no significant effect on the human environment, a formal environmental impact statement was not required. Additionally, a non-governmental research institution, Battelle Columbus Laboratories, studied the possible socio-economic impact of the action and concluded that the Lexington area would suffer only minimal short term unemployment as a result of the partial closure.

On August 22, 1975, a complaint was filed in the United States District Court seeking an injunction to block the proposed action. The plaintiffs included four Kentucky Congressmen, two United States Senators, two county judges, the City of Richmond, Kentucky, the Lexington-Fayette Urban County Government, the Greater Lexington Chamber of Commerce, three property and business owners in the vicinity of LBAD and four civilian employees at LBAD. The defendants were the United States Army, the Secretary of Defense, the Secretary of the Army, the Army Chief of Staff, and the Department of Defense. The District Court granted the plaintiffs a preliminary injunction on October 31, 1975, but did not rule upon the question which this court concludes to be dispositive as to the litigation: Does the scope of the term "human environment" extend to the closing of a military base and transfer of personnel and functions by the United States Army?

Appellants' assert that this is not an environmental lawsuit. They argue that Congress did not intend that NEPA be a statutory cure-all for the temporary economic ills of Lexington, Kentucky. The appellees counter by stating that socio-economic impacts fall within the scope of NEPA and contend that the term "human environment" means environment which directly affects human beings, including unemployment and loss of revenue. The appellants argue that NEPA is directed only to the preservation of those resources needed to sustain present and future generations and that personal and economic interests are not in and of themselves sufficient to bring the statute into play. In the present case there is no long term impact, no permanent commitment of a national resource and no degradation of a traditional environmental asset, but rather short term personal inconveniences and short term economic disruptions. We conclude that such a situation does not fall within the purview of the Act.

The contention that NEPA goes beyond what might be stated to be the "physical

environment" is not in dispute. Environmental impact statements have been mandated in such diverse instances as construction of a federal jail in the back of the United States Court House in Manhattan. *Hanly v. Kleindienst*, 484 F.2d 448 (2d Cir. 1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974); *Hanly v. Kleindienst*, 471 F.2d 823 (2d Cir. 1972), *cert. denied*, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973); *Hanly v. Mitchell*, 460 F.2d 640 (2d Cir. 1972), *cert. denied*, 409 U.S. 990, 93 S.Ct. 313, 34 L.Ed.2d 256 (1972); and railroad abandonment proceedings. *Harlem Valley Transportation Ass'n v. Stafford*, 500 F.2d 328 (2d Cir. 1974); *City of New York v. United States*, 337 F.Supp. 150 (E.D.N.Y.1972).

Although factors other than the physical environment have been considered, this has been done only when there existed a primary impact on the physical environment. *See Chelsea Neighborh'd Ass'ns v. U. S. Postal Service*, 516 F.2d 378, 388 (2d Cir. 1975); *Minnesota Public Interest Research Group v. Butz*, 498 F.2d 1314, 1322 (8th Cir. 1974); *Maryland-National Capital Park v. United States Postal Services*, 159 U.S.App. D.C. 158, 487 F.2d 1029, 1037–38 (1973); *Hanly v. Mitchell*, 460 F.2d 640, 647 (2d Cir. 1972), *cert. denied*, 409 U. S. 990, 93 S.Ct. 313, 34 L.Ed.2d 256 (1972).

In discussing the breadth of NEPA, the District of Columbia Circuit has stated:

Not all deviations from local zoning will necessarily rise to the level of affecting the "quality of human environment" within the fair meaning of that term. The "overriding" issue underlying MNCPC's recommended rejection of this project was "social and economic" and as we observed, rooted in the prospective loss of real and personal property taxation. A secondary, and related factor, was the prospect of an influx of low-income workers into the County. Concerned persons might fashion a claim, supported by linguistics and etymology, that there is an impact from people pollution on "environment," if the term be stretched to its maximum. We think this type of effect cannot fairly be projected as having been within the contemplation of Congress. *Maryland-National Cap. Pk. & Pl. Com'n. v. U. S. Postal Serv.*, 159 U.S.App.D.C. 158, 487 F.2d 1029, 1037 (1973)

*See also, National Association of Government Employees et al. v. Rumsfeld*, 413 F.Supp. 1224 (D.D.C. No. 75–1670, May 14, 1976); and *American Association of Government Employees et al. v. Rumsfeld*, F.Supp. (W.D.Texas, Nos. SA–76–CA–116, May 13, 1976).

We conclude that the facts of the present case likewise do not come "within the contemplation of Congress."

In discussion of NEPA on the floor of the Senate, Senator Jackson provided insight into the breadth of the statute:

What is involved is a congressional declaration that we do not intend, as a government or as a people, to initiate actions which endanger the continued existence or the health of mankind: That we will not intentionally initiate actions which will do irreparable damage to the air, land, and water which support life on earth.

\*     \*     \*     \*     \*     \*

An environmental policy is a policy for people. Its primary concern is with man and his future. The basic principle of the policy is that we must strive in all that we do, to achieve a standard of excellence in man's relationships to his physical surroundings.

\*     \*     \*     \*     \*     \*

Taken together, the provisions of section 102 directs any Federal agency which takes action that it must take into account environmental management and environmental quality considerations. 115 Cong.Rec. 40416 (1969).

In seeking to define the crucial term "the human environment," Senator Jackson stated:

Mr. President, there is a new kind of revolutionary movement underway in

this country. This movement is concerned with the integrity of man's life support system—the human environment. 115 Cong.Rec. 40417 (1969).

To extend the meaning of "the integrity of man's life support system" to apply to the factual situation involved in this case would distort the congressional intent. Since the case before us is primarily concerned with the effects of unemployment, an analogy drawn by Senator Jackson is of significance:

> In many respects, the only precedent and parallel to what is proposed in S. 1075 is in the Full Employment Act of 1946, which declared an historic national policy on management of the economy and established the Council of Economic Advisers. It is my view that S. 1075 will provide an equally important national policy for the management of America's future environment. 115 Cong.Rec. 40416 (1969).

■ NEPA is not a national employment act. Environmental goals and policies were never intended to reach social problems such as those presented here.[1] We, therefore, dissolve the injunction and reverse the judgment, remanding the case to the District Court for dismissal.

No costs are taxed. Each party will bear his own costs on this appeal.

---

[1]. The United States District Court for the Western District of Missouri has adopted a view contrary to ours in a case involving a similar factual situation. *McDowell v. Schlesinger,* 404 F.Supp. 221 (W.D.Mo.1975). We respectfully decline to follow the reasoning of that opinion.