**TOWNSHIP OF DOVER, a Municipal Corporation of the State of New Jersey**

v.

**UNITED STATES POSTAL SERVICE and Benjamin F. Bailar, Postmaster General.**

**Civ. A. No. 76–789.**

United States District Court, D. New Jersey.

March 16, 1977.

Joseph L. Foster, First Asst. Township Atty., Township of Dover, Toms River, N.J., for plaintiff.

Jonathan L. Goldstein, U. S. Atty., William E. Staehle, Asst. U. S. Atty., Newark, N.J., for defendants.

## OPINION

BARLOW, District Judge.

The United States Postal Service is presently constructing a $20 million mail processing facility in Hamilton Township, New Jersey, which is designed to absorb many smaller processing operations located in various central New Jersey communities. The United States Post Office in Dover Township, New Jersey houses one such processing facility.

As a result of the construction of the new centralized processing facility, the Township of Dover instituted the present action in which it seeks declaratory and injunctive relief, alleging that the Postal Service has failed to comply with the National Environmental Policy Act, 42 U.S.C. § 4321, et seq. (NEPA), and the Intergovernmental Cooperation Act, 42 U.S.C. § 4231, et seq. (ICA). Specifically, the plaintiff would have this Court require that the Postal Service prepare an Environmental Impact Statement (EIS) pursuant to 42 U.S.C. § 4332(2)(C) prior to moving the Dover Township processing facility to Hamilton Township. Additionally, the plaintiff argues that the defendants have failed to comply with the mandate of 42 U.S.C. § 4231(b) of the ICA which they insist requires the Postal Service to consult with Dover Township officials before relocating the Dover Post Office processing facility.

The defendants take the position that neither the provisions of NEPA nor ICA are applicable here and, accordingly, move for a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). Subsequent to the filing of the instant action, the defendants submitted the affidavit of John R. Cochran, a Regional Director of the Postal Service. Thus, the Court will treat the motion as one for summary judgment. Fed.R.Civ.P. 56.

The plaintiff filed a cross-motion for summary judgment.

## NEPA

■ The threshold consideration for the Court must be whether the action contemplated by the Postal Service—closing the Dover Township processing facility—is an action which falls within the zone of interest protected by NEPA. If the Postal Service action falls within the purview of NEPA—as the plaintiff insists it does—then an EIS must be prepared if the action is a "major Federal action significantly affecting the quality of the environment", 42 U.S.C. § 4332(2)(C).[1]

Specifically, the plaintiff contends that the defendants' action here

> will result in the decrease of existing and future employment opportunities in the 'Township' with respect to such mail-processing facilities and will otherwise substantially and irreparably harm the commercial, social, and general human environment of the 'Township' to the detriment of the Plaintiff and its residents.

Complaint at 4. Here, the plaintiff speaks in terms of a commercial and social impact on the community and fails to express a concern with any impact which the planned shift of facilities may have on the physical environment of Dover Township. Thus, it appears that the plaintiff's concern over the defendants' proposed action is more socio-economic than ecological. In *Breckinridge v. Rumsfeld*, 537 F.2d 864 (6th Cir. 1976), the Sixth Circuit had occasion to consider the scope of the term "human environment". In that case, the Army had decided to close a military base and transfer the personnel elsewhere, and chose not to file an EIS. The plaintiffs in *Breckinridge* argued, as does the plaintiff here,

---

1. The defendants also urge here that NEPA does not apply to the Postal Service. However, assuming, arguendo, that NEPA is applicable to the Postal Service, see *Chelsea Neighborhood Association v. United States Postal Service,* 516 F.2d 378 (2d Cir. 1975), the preparation of an EIS would not necessarily be required if it were determined that the removal of the Dover processing facility (1) did not constitute a "major Federal action" or (2) even if it were deemed to be a "major Federal action" it was, nonetheless, determined that it did not significantly affect the quality of the human environment. 39 C.F.R. 775.5.

that socio-economic impacts fall within the scope of NEPA and contend that the term 'human environment' means environment which directly affects human beings, including unemployment and loss of revenue.

*Id.* at 865. The Sixth Circuit firmly disagreed, holding that NEPA does not apply where

there is no long term impact, no permanent commitment of a natural resource and no degradation of a traditional environmental asset, but rather [only] short term personal inconveniences and short term economic disruptions.

*Id.* The *Breckinridge* court gleaned the congressional intent of the term "human environment" from the remarks of Senator Jackson which had been made on the Senate floor during a discussion of NEPA. Senator Jackson characterized this term as "the integrity of man's life support system". *Id.* at 867 (quoting from 115 Cong. Rec. 40417 (1969)).

This is not to say that socio-economic factors may not be considered here. *See, e. g., Chelsea Neighborhood Associations v. United States Postal Service,* 516 F.2d 378, 388 (2d Cir. 1975). Rather, the importance of such factors is secondary to the ecological considerations which must assume a primary role in evaluating the environmental impact of a federal action. *Breckinridge, supra,* at 866. Without allegations of an ecological impact on the environment, the provisions of NEPA simply are not applicable.

The plaintiff has attempted to avoid the *Breckinridge* holding by discussing at length the recent Second Circuit decision in *City of Rochester v. United States Postal Service,* 541 F.2d 967 (2d Cir. 1976). The *Rochester* case is similar in many respects to the instant litigation. There, the Postal Service had planned to move the Rochester mail processing facility from the inner city to a new $12 million facility in a suburban area seven miles from the city limits. No EIS was prepared by the Postal Service as it concluded the construction did not have a significant effect on the quality of the human environment. *Id.* at 973. The plaintiffs brought suit to enjoin the move under NEPA and ICA. The Second Circuit concluded that not only should the ecological factors pertaining to the construction of the new facility have been considered by the Postal Service but, also, the possible environmental effects associated with the abandonment of the inner city facility. These were found to include: (1) the transfer of 1400 employees to the new facility; (2) the increased traffic patterns between the city and the suburban facility; (3) the possible loss of jobs for those inner city employees who could not afford to commute to the new facility; (4) the possible move to the suburbs by many of the inner city employees, contributing to the deterioration of inner city neighborhoods; and (5) the abandonment of the inner city facility which may contribute to urban blight. *Id.* Thus, the Court was concerned with the possible ecological effects which may have accompanied the movement of 1400 employees from the inner city to the suburbs, along with the possible physical decay of various sections of the inner city as a result of such a move. Admittedly, the Court also made reference to the possible economic effect in terms of a potential loss of jobs to those who could not commute to the suburban facility. However, this potential economic impact must assume a secondary position within the Court's analytical framework; primary was the possibility of a deterioration of the physical environment. Thus, *Breckinridge* and *Rochester* may be harmonized to the extent both recognized—*Breckinridge* explicitly and *Rochester* implicitly—that a primary impact on the physical environment must be alleged before a cause of action under NEPA may be maintained.

Insofar as the plaintiff relies on *Rochester* for the proposition that economic impact may singularly support this NEPA action, the reliance is misplaced. The factual disparities between *Rochester* and the instant matter further support this conclusion. *Rochester* involved the transfer of 1400 employees from the inner city to the suburbs. In the case at bar, we are presented with

**298**

less than 120 employees being relocated from one suburban township to another. The fear of inner city decay, present in *Rochester,* is lacking here, especially since the Dover Township postal facility will remain in operation, losing but one element of its day-to-day activities. It will continue to function as the Township's major post office. Cochran affidavit at 2.

Accordingly, it is the opinion of this Court that, there appearing no material facts in dispute between the parties, the defendants are entitled to judgment as a matter of law as to the first and second counts of the plaintiff's complaint—those counts alleging a continuing violation of NEPA.

### ICA

As to the plaintiff's second contention, that the Intergovernmental Cooperation Act (ICA), 42 U.S.C. § 4231, *et seq.,* applies to the circumstances here, it is the view of the Court that under the facts present here the Postal Service is not required to comport with the Act's requirements vis-a-vis the Dover Township facility. The Act deals with developmental programs and does not obtain here where the facility is being transferred out of a community.

Accordingly, the defendants' motion for judgment on the pleadings, which the Court has treated as a motion for summary judgment, is granted as to all counts of the complaint. The plaintiff's cross-motion for summary judgment is denied. An appropriate order will be submitted.