**The GOODMAN GROUP, INC.,**
**Plaintiff-Appellant,**

v.

**Henry DISHROOM,\* Samuel R. Pierce, Jr.,\*\* Defendants-Appellees.**

No. 80–4370.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 9, 1981.

Decided June 8, 1982.

---

\* We substitute Henry Dishroom, the Area Director for the Department of Housing and Urban Development, as successor to the original defendant-appellee Robert Cunningham, the former Area Director, pursuant to Fed.R.App.P. 43.

\*\* We substitute Samuel R. Pierce, Jr., the Secretary of the Department of Housing and Urban Development, as successor to the original defendant-appellee Patricia Roberts Harris, the former Secretary, pursuant to Fed.R.App.P. 43.

Sarge R. Holtzman, San Francisco, Cal., for plaintiff-appellant.

Bruce N. Bagni, Washington, D. C., argued, for defendants-appellees; Anthony J. Steinmeyer, Washington, D. C., on brief.

Before MERRILL and KENNEDY, Circuit Judges, and KING,*** District Judge.

KENNEDY, Circuit Judge:

In 1966, the Department of Housing and Urban Development (HUD) and the San Francisco Redevelopment Agency (SFRA) designated an area for redevelopment as part of a loan and grant agreement. The agreement was made under the authority of the Housing Act of 1949, 42 U.S.C. § 1441 et seq. (1976). The Goodman Group, Inc., appellant here, represents a group of local artists who occupy the Goodman Building, which is located in San Francisco within the redevelopment area.

At first, the renewal project scheduled the Goodman Building for demolition. In 1975, through efforts by the building's occu-

pants and other citizens, the building was listed on the National Register of Historic Places. Demolition plans were cancelled, and the building was slated for interior conversion to low income housing units. In 1978, HUD completed a Special Environmental Clearance for the refurbishing and approved an agreement for remodelling between the SFRA and one Wofsy. HUD determined no Environmental Impact Statement (EIS) was needed for the scheduled work.

Appellant sued in the district court in 1978, asserting various grounds for enjoining rehabilitation of the Goodman Building. Appellant claimed, inter alia, that HUD violated the National Environmental Policy Act (NEPA) by failing to file an EIS, that HUD violated federal regulations regarding site selection and relocation, and that HUD tortiously interfered with a previous contract between Wofsy and the Goodman Group. On HUD's motion, summary judgment was granted against the Goodman Group, which now appeals. We affirm.

I.

Appellant claims that HUD's actions will displace local artists who inhabit the Goodman Building and thus irreparably damage the cultural character of the area. The theory here advanced is that an impact on the cultural environment makes it unlawful for HUD to proceed with the project without preparing an EIS. Thus, at the center of the appeal lies the premise that an EIS is required whenever major federal action affects the esthetic or cultural environment. The proposition is not a correct interpretation of NEPA as a general rule, and no causal nexus between the project and a significant cultural impact has been demonstrated here in any event.

With the enactment of NEPA, Congress gave explicit recognition to the need to assure "esthetically and culturally pleasing surroundings" and to preserve impor-

*** Honorable Samuel P. King, Chief Judge, United States District Judge for the District of Hawaii, sitting by designation.

tant "historic, cultural, and natural aspects of our national heritage." 42 U.S.C. § 4331(b) (1976). Where an EIS has been undertaken because of potential project effects on the natural environment, it has been appropriate, therefore, for the agency to address any demonstrated or potentially significant project impacts on cultural, economic, or social matters. *E.g., Como-Falcon Community Coalition, Inc. v. United States Department of Labor*, 609 F.2d 342, 345 (8th Cir. 1979), *cert. denied*, 446 U.S. 936, 100 S.Ct. 2154, 64 L.Ed.2d 789 (1980); *Metlakatla Indian Community v. Adams*, 427 F.Supp. 871, 875 (D.D.C.1977); 40 C.F.R. § 1508.14 (1981). The question here is whether the cultural threat posed in this case, standing by itself, requires preparation of an EIS. We conclude it does not.

We need not reject the theoretical possibility that the cultural impact from a project might require an EIS in an exceptional case, but the proposition is a doubtful one. Most certainly, it does not operate in the facts of this case.

■ Regulations under NEPA state that "economic or social effects are not intended by themselves to require preparation of an [EIS]," but that such matters if related to project impacts may be addressed where an EIS is otherwise being prepared. 40 C.F.R. § 1508.14 (1981). There are sound reasons for that rule, and they apply equally to the cultural impact here. Economic, social, esthetic, or cultural effects are difficult to define in the context of NEPA. Relating project impact to effects on the physical environment, such as water, air, and ecosystems, implements the intent of Congress in enacting the statute. *Maryland National Capital Park and Planning Commission v. U. S. Postal Service*, 487 F.2d 1029, 1037–39 (D.C.Cir.1973). The reference point of physical environmental effects serves also to confine scarce resources for EIS preparation to those cases where they are most needed, a goal our circuit has identified as an appropriate one. *Preservation Coalition, Inc. v. Pierce*, 667 F.2d 851, 858 (9th Cir. 1982). Because physical effects on the environment are more readily ascertainable and

definable within the NEPA framework than are cultural and economic ones, an agency has more discretion in rejecting this latter category from the initial consideration of whether an EIS is required. Thus, although factors other than the physical environment may be considered, this generally is appropriate only when it is a primary impact on the physical environment that generates the EIS. *Breckinridge v. Rumsfeld*, 537 F.2d 864, 866 (6th Cir. 1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977).

In applying these principles, courts have demanded an EIS for a variety of federal projects, including the construction of a medical center for prisoners in an historically significant community, *Ely v. Velde*, 451 F.2d 1130 (4th Cir. 1971), the building of a sixteen-story apartment complex in an area containing no high-rise structures, *Goose Hollow Foothills League v. Romney*, 334 F.Supp. 877 (D.Or.1971), the razing of small shops to facilitate the erection of high-rise office buildings, *Businessmen Affected Severely By the Yearly Action Plans, Inc. v. D.C. City Council*, 339 F.Supp. 793 (D.D.C. 1972), and the demolition of edifices proposed for listing on the national register of historic landmarks, *Boston Waterfront Residents Ass'n, Inc. v. Romney*, 343 F.Supp. 89 (D.Mass.1972). The federal actions in each of these cases either threatened the physical resources of the area, by posing significant traffic, population-concentration, or water-supply problems, or proposed the irreversible alteration of the historic attributes of rare sites.

In other cases, courts have determined that the potential impact to the natural environment was insufficient to mandate the preparation of an EIS. For instance, where the government proposed reductions of military personnel that would in turn cause increases in local unemployment, courts have concluded EIS's were not necessary because only the socio-economic environments of the regions were threatened. *E.g., Image of Greater San Antonio, Tex. v. Brown*, 570 F.2d 517 (5th Cir. 1978); *Breckinridge v. Rumsfeld*, 537 F.2d 864 (6th Cir.

1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977). The Eighth Circuit has ruled that only socio-economic factors would be affected by the establishment of a job corps center on a former college campus, despite the plaintiff's contention that the replacement of college students with disadvantaged youth would alter the character of the neighborhood. *Como-Falcon Community Coalition, Inc. v. United States Department of Labor,* 609 F.2d 342 (8th Cir. 1979), *cert. denied,* 446 U.S. 936, 100 S.Ct. 2154, 64 L.Ed.2d 789 (1980). Even where the project proposed the introduction of a new group of residents by building low income housing in predominately non-low income neighborhoods, a court has upheld an agency's decision not to prepare an EIS. *Nucleus of Chicago Homeowner's Ass'n v. Lynn,* 524 F.2d 225 (7th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976). Finally, this circuit recently approved of an agency's carefully prepared decision not to prepare an EIS for a proposal contemplating the demolition of a building listed on the National Register of Historic Places. *Preservation Coalition, Inc. v. Pierce,* 667 F.2d at 859–60.

The precise question before us is whether the agency acted reasonably in determining that no significant environmental effects were likely to result from the proposed federal action.[1] *City and County of San Francisco v. United States,* 615 F.2d 498, 500 (9th Cir. 1980). While the foregoing discussion suffices to demonstrate that the agency did not err in its interpretation of NEPA, a further significant factor in support of the agency's action should be noted. HUD worked in concert with local officials and acted consistently with local policies on land use. We have specifically recognized such compliance is a factor pointing toward the validity of a conclusion that there is no significant impact on the environment.

"[W]here a federal project conforms to existing land use patterns, zoning, or local plans, such conformity is evidence supporting a finding of no significant impact." *Preservation Coalition, Inc. v. Pierce,* 667 F.2d at 861.

█ It is also relevant that in preparing the project the agency appeared from the record to have fully complied with the National Historic Preservation Act, the Goodman Building having been identified as an historic site. While such compliance is not presumptive evidence of compliance with NEPA, *Preservation Coalition, Inc. v. Pierce,* 667 F.2d at 858–59, it is relevant in determining whether the agency's decision not to prepare an EIS was fully informed.

Underlying this case is the contention that the local artists' occupancy of the Goodman Building lends the neighborhood a style and cultural aspect of significance and worth, and that when new tenants replace the artists the neighborhood will be the poorer for it. Even if these effects would necessitate the preparation of an EIS, a dubious proposition in light of the preceding analysis, there has been no showing of such effects on this record. It does not appear that the identities and interests of the residents of the Goodman Building manifest any significant influence on the exterior environment. There is even an indication that some residents themselves may be eligible for occupancy of the Goodman Building when it is a low income housing project. The serious cultural impact alleged by appellant is tenuous at best.

## II.

█ Under present law, in preapproving a property, HUD must consider the displacement problems a project will pose to residents. 24 C.F.R. §§ 881.206(h), 881.-303(a) (1981). Appellant claims HUD failed to evaluate this factor in approving renova-

---

1. Other circuits have adopted the arbitrary and capricious standard for judicial review of agency actions under NEPA. *E.g., Nucleus of Chicago Homeowners Ass'n v. Lynn,* 524 F.2d 225, 229–30 (7th Cir. 1975), *cert. denied,* 424 U.S. 967, 96 S.Ct. 1462, 47 L.Ed.2d 734 (1976); *Hanly v. Kleindienst,* 471 F.2d 823, 828–30 (2d Cir. 1972). This circuit, however, uses a reasonableness standard. *City and County of San Francisco v. United States,* 615 F.2d 498, 500 (9th Cir. 1980); *City of Davis v. Coleman,* 521 F.2d 661, 673 (9th Cir. 1975).

tion of the Goodman Building, and the parties dispute whether HUD was under an obligation to analyze this criterion under the 1978 code. It is unnecessary for us to decide whether the 1978 code required HUD to make such an evaluation because even if it did, HUD properly considered the potential hardships from displacement.

Wofsy included a statement concerning potential relocation problems with his preliminary proposal, in conformity with section 881.205(*o*). 24 C.F.R. § 881.205(*o*) (1978) (current version at 24 C.F.R. § 881.-305(*o*) (1981)). The statement indicated Wofsy was relying on the SFRA and the City Central Relocation Service to relocate tenants. The SFRA agreed to undertake this responsibility for relocation in its disposition agreement with Wofsy, and HUD, satisfied with the SFRA's assurance, approved the proposal. Under these circumstances, HUD fully complied with any duties it might have had under the 1978 code.

### III.

Appellant and Wofsy allegedly entered into "an agreement concerning joint efforts and cooperation between the parties in matters connected with the continued occupancy of the Goodman Building by members of [appellant]." Appellant claims HUD tortiously interfered with this contract by appraising Wofsy's application for government assistance and by giving preliminary approval.

Certain actions are not within the Federal Tort Claims Act, and as to those matters the Government is immune from suit. *Henninger v. United States*, 473 F.2d 814, 816 (9th Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973). The Federal Tort Claims Act is explicit in excluding from its coverage "any claim arising out of ... interference with contract rights." 28 U.S.C. § 2680(h) (1976). Therefore, the Government is immune from suit for the claim based on tortious interference with contract rights.

Even if such a claim were cognizable in federal courts, the record establishes that appellant could not as a matter of law succeed on the merits. There is no evidence HUD officials had any knowledge of the preexisting agreement between appellant and Wofsy during their appraisal of Wofsy's application. By the time HUD gave preliminary approval, appellant had already sued Wofsy for breach of contract, which suit terminated any contract that might have existed between appellant and Wofsy. The actions taken by HUD were coincident to the lawful administration of a mandated program. Under such circumstances, a party cannot maintain an action for intentional inducement of breach of contract or for negligent interference with prospective economic advantage. *See, e.g., DeVoto v. Pacific Fidelity Life Insurance Co.*, 618 F.2d 1340, 1347–51 (9th Cir.), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980); *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 598 P.2d 60, 63–64, 157 Cal.Rptr. 407, 410–11 (1979); *Imperial Ice Co. v. Rossier*, 18 Cal.2d 33, 112 P.2d 631, 633 (1941); *Freed v. Manchester Service, Inc.*, 165 Cal. App.2d 186, 331 P.2d 689, 690–91 (1958).

The other grounds of the appeal are without merit.

AFFIRMED.