PROPERTY OWNERS ASSOCIATION
OF DEEP CREEK LAKE,
INCORPORATED, et al.

v.

Ann M. GORSUCH, etc., et al.

Civ. No. K–82–2869.

United States District Court,
D. Maryland.

March 16, 1983.

M. Natalie McSherry, Alfred L. Scanlon, Jr., Edward F. Houff, and Whiteford, Taylor, Preston, Trimble & Johnston, Baltimore, Md., for plaintiffs.

J. Frederick Motz, U.S. Atty., Robert McDonald, Asst. U.S. Atty., Baltimore, Md., David R. Collins, U.S. Dept. of Justice, Washington, D.C.; and Renee Sarajian, U.S. E.P.A., Philadelphia, Pa., for defendants Gorsuch, Bibko, Bulman & U.S. E.P.A.

Stephen H. Sachs, Atty. Gen., of Md., Marc K. Cohen, Asst. Atty. Gen., of Baltimore, Md., for defendants Buck and Eichbaum.

Gorman E. Getty, III, and Carscaden, Gilchrist, Getty & Leasure, Cumberland, Md., for defendants Garrett County, Md. and Garrett County Sanitary Dist.

H. Russell Smouse, Stephen B. Caplis, and Melnicove, Kaufman, Weiner & Smouse, Baltimore, Md., for defendant Garrett County, Md.

Warren Rich, and Niles, Barton & Wilmer, Easton, Md., for defendant Garrett County Sanitary Dist.

## MEMORANDUM AND ORDER

FRANK A. KAUFMAN, Chief Judge.

(1) A lengthy hearing was held in this case on the record on February 16, 1983. At that time, for reasons set forth on the record, this Court concluded that none of the grounds for relief stated by plaintiffs entitled them to any relief except perhaps in connection with two areas of plaintiffs' complaint. With regard to one such area, this Court asked for further briefing by the parties which their counsel have, since February 16, 1983, done.

(2) In connection with the first of those two areas of inquiry—the area not further briefed by counsel since February 16, 1983—plaintiffs allege violations by one or more or all of defendants of the Clean Water Act, 33 U.S.C. § 1251 *et seq.*, on the ground that defendant Garrett County Sanitary District has failed to comply with the sludge disposal reporting requirements of a National Pollutant Discharge Elimination System (NPDES) permit for the Deep Creek sewerage facility and that the federal, state and county defendants herein have failed to enforce said reporting requirements. That NPDES permit, which was issued by the Maryland Water Resources Administration (WRA) under authority delegated to it by the U.S. Environmental Protection Agency pursuant to 33 U.S.C. § 1342, provides in section II C thereof that "[w]ithin 90 days of the effective date of this permit" a report shall be furnished to the WRA concerning, inter alia, the method and location used by the permittee for sludge disposal. Although the face of the permit is clearly marked "Effective Date, March 7, 1980," and defendant Garrett County Sanitary District acknowledges that no such report was furnished within

the required time period, it seems plain both from the text of the reporting provision and in common sense that the reporting requirement can meaningfully be applied only to an existing and operating sewerage treatment facility. That approach is in fact contained in a letter addressed to defendant Garrett County Sanitary District by Jeffrey L. Reim, Chief, Division of Sewerage of the State Water Resource Administration, dated December 26, 1982, in which Mr. Reim states that the 90 day reporting requirement "would obviously be applicable only to existing and presently operating facilities." In any event, defendant Garrett County Sanitary District did provide information regarding sludge disposal to the state on November 10, 1982, and did state during the course of the hearing on February 16, 1983 that information regarding sludge disposal will be provided to the state prior to any such disposal. Accordingly, it would appear that no violation of the NPDES permit nor of the Clean Water Act has occurred. If, in the future, defendant Garrett County Sanitary District should violate the NPDES permit, plaintiffs may seek such relief, if any, as is then appropriate and the within judgment for defendants shall be no bar thereto. Whether, if any such relief is sought in this Court, this Court would have subject matter jurisdiction is a question which this Court need not and does not reach at this time.

■ (3) Plaintiffs' basic thrust in this case has been and is that one or more or all of defendants have violated the National Environmental Policy Act of 1969 (NEPA), as amended, 42 U.S.C. § 4321 et seq., because the U.S. Environmental Protection Agency (EPA) did not prepare an Environmental Impact Statement (EIS) for the Deep Creek project. NEPA requires federal agencies to prepare an EIS for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c). No EIS is required, however, when an appropriate federal agency concludes on the basis of an environmental assessment that a proposed action will not have a significant environmental affect. An agency may then issue a negative declaration, 40 C.F.R. § 6.104(e) (1979), or a finding of no significant impact (FONSI), 40 C.F.R. § 6.507(e) (1980). In the within case, the EPA issued a negative declaration in 1977 and a FONSI in 1981 with respect to the Deep Creek Project.

■ During the February 16, 1983 hearing, this Court noted that the scope of this Court's review of those decisions of the EPA is limited to a determination that the EPA acted neither arbitrarily or capriciously. See Providence Road Community Association v. EPA, 683 F.2d 80 (4th Cir. 1982). A higher "reasonableness" standard of review may be required where a plaintiff raises a "substantial environmental issue concerning the proposed project" by alleging facts which "were not considered in the administrative record and which, if true, would constitute a 'substantial impact on the environment.'" Id. at 82 n. 3, quoting from Winnebago Tribe of Nebraska v. Ray, 621 F.2d 269, 271 (8th Cir.1980).

During the February 16, 1983 hearing this Court examined in detail each of plaintiffs' factual allegations and concluded, after review of the administrative record and of all of plaintiffs' submissions, that there was no evidence that the EPA acted neither unreasonably or arbitrarily and capriciously. Moreover, in no instance did plaintiffs show or have plaintiffs shown up to this date that the EPA omitted consideration of any factor which would amount to a "substantial environmental impact" or even a significant environmental impact. However, during the February 16, 1983 hearing, this Court did request additional briefing by counsel on both sides in connection with plaintiffs' allegations that the EPA failed adequately to perform a cost-effectiveness analysis of the proposed project and alternatives thereto, as required by 40 C.F.R. § 6.507(c)(5) and 40 C.F.R. § 35.917–1(d), because certain cost data for grinder pump maintenance were omitted or underestimated in any such analysis. That is the second of the two areas in connection with which

this Court withheld final determination at the close of the February 16, 1983 hearing.

■ After considering all of the memoranda and documents filed by the parties and the entire record herein, this Court hereby concludes, contrary to plaintiffs' contentions, that documents in the administrative record establish that cost-effectiveness analyses were performed and that cost data for grinder pump maintenance and replacement were incorporated into such analyses. Specifically, in the cost-effectiveness analysis performed by the engineering firm of Rummel, Klepper & Kahl, Administrative Record Document No. 95, an operating and maintenance figure for a sample portion of the pressure sewer system appears specifically to account, in one of the accompanying tables, for labor costs associated with grinder pump maintenance for the purpose of comparing that system with a proposed alternative. In another such table, there is a specific line item for grinder pump replacement, which appears to be based on a replacement cost of $1,500 per pump. A similar inclusion is found in the later cost-effectiveness analysis performed concerning the proposed expansion of the Deep Creek project. *See* Administrative Record Document No. 107. In Table 3 thereof, there are line items for grinder pump replacement costs and for overall system operation and maintenance. It is unclear whether that latter figure includes maintenance costs associated with grinder pumps other than their replacement cost. In the engineering reports for the basic and expanded systems, there are indications that cost estimates were based upon bid prices for similar construction projects, appropriately adjusted, and upon manufacturer's quotations. There would appear to be no reason why this Court should question such cost estimates, which neither appear nor have been shown to be unreasonable. However, even if it were so shown, for the purposes of the cost-effectiveness analysis comparing the basic system with the alternatives for expanded systems, any omission of grinder pump maintenance costs would appear to be irrelevant insomuch as such costs would seemingly vary in proportion to the size of the project. I.e., the results of such cost-effectiveness analysis would not necessarily change.

It is true that such omission, could affect the bottom-line estimate of user costs. Plaintiffs have stressed that grinder pump maintenance and replacement costs are not reflected, or, at the most, are reflected only inadequately in the calculation of user costs, at least in the documents dated May 29, 1982 and January 13, 1983 which were distributed at public meetings, and which are attached to plaintiffs' memorandum dated February 18, 1983. In the earlier of those two documents, no such cost item is included at all, and in the latter, the sinking fund line item would seem to have been based upon a replacement cost estimate far below the replacement cost estimates set forth elsewhere in grinder pump cost data concerning the project. But even so assuming, *arguendo* only, and even if it be further assumed that the user cost estimates are too low, all of that would not provide plaintiffs with a meritorious basis for relief in the within case. That is because no provision of NEPA or of the regulations promulgated thereunder or of any other act or regulation requires anything more than that an EPA environmental assessment include an evaluation of alternatives to the project, *see* 40 C.F.R. § 6.507(c)(5), an evaluation which takes into account the cost-effectiveness analysis performed as part of the grant approval process. *See* 40 C.F.R. § 35.917–1(d), 40 C.F.R. Part 35, Appendix A.

■ With regard to comparison of alternatives to the project at hand, there is abundant evidence in the administrative record that adequate and reasonable administrative screening of project alternatives, including their cost features, in fact took place.

Nevertheless, plaintiffs contend that projected cost figures for the project exceed the benchmark user cost figures which the EPA employs to determine the financial affordability of a proposed project. Such benchmark figures are set

forth in EPA memoranda and are seemingly nothing more than internal, non-binding guidelines used by that agency. Additionally, it is to be noted that if and when such benchmark figures are in fact exceeded, the EPA may take one of several actions, such as to review the appropriateness of required sewerage treatment levels, to re-evaluate the cost-effectiveness of the project alternatives, or to investigate supplemental funding sources. *See* Supplemental Affidavit of Garrison D. Miller, paragraph 8 and Exhibit I thereto.

■ During the February 16, 1983 hearing, it was observed that every estimate of user costs found in the administrative record appears to be below the benchmark figure. But even assuming that those estimates were too low, again *arguendo* only, plaintiffs have produced no authority nor is this Court aware of any authority indicating that the failure of the EPA to apply its internal benchmark figures gives rise to a cause of action under either NEPA or the Clean Water Act. Rather, as this Court stated at the February 16, 1983 hearing, even if it be assumed that the purely economic impacts of the project were not adequately considered by the EPA, that alone is not sufficient to trigger the requirement that an EIS be prepared. *See e.g., Providence Road Community Association v. EPA*, 11 E.L.R. 20780 (W.D.N.C.1981). Therein, Judge McMillan wrote (at 20782): "As plaintiffs have failed to establish any impacts upon the physical or natural environment, an economic impact, even if it could be shown, is insufficient to surpass the NEPA threshold requiring the preparation of an impact statement. *Breckinridge v. Rumsfeld*, 537 F.2d 864 [6 ELR 20597] (6th Cir.1976), cert. denied, 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *Metlakatla Indian Community v. Adams*, 427 F.Supp. 871, 874–875 [7 ELR 20407] (D.D.C.1977), 40 C.F.R. § 1500.14 (1980)." That assessment is as equally applicable in this case as it was in *Providence Road*. In the *Breckinridge* case cited by Judge McMillan, then Chief Judge Phillips stated (at 866): "Although factors other than the physical en-

vironment have been considered [in other cases], this has been done only when there existed a primary impact on the physical environment." The administrative determination that such a primary impact does not exist in the within case is adequately supported by the administrative record and is one which this Court will not disturb for reasons set forth in more detail on the record during the hearing on February 16, 1983.

(4) In sum, for the reasons set forth during the February 16, 1983 hearing, and in the within Memorandum and Order, defendants' motions for summary judgment are hereby granted and judgments are hereby entered for defendants.