**Joseph AZZOLINA, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

**Civ. No. 83–4867(AET).**

United States District Court, D. New Jersey.

Feb. 26, 1985.

Abramoff, Christie, Fox & Zaro by Gary E. Fox, Tinton Falls, N.J., for plaintiffs.

W. Hunt Dumont, U.S. Atty. by Irene Dowdy, Asst. U.S. Atty., Trenton, N.J., for defendant.

ANNE E. THOMPSON, District Judge.

This matter is before the court on cross motions for summary judgment. The defendant also moves to dismiss for lack of subject matter jurisdiction. The plaintiff is Joseph Azzolina. He purports to bring his complaint as a class action but has not moved for class certification as required by FED.R.CIV.P. 23. The defendant is the United States Postal Service ("U.S.P.S.").

The facts appear to be as follows. Azzolina is challenging the selection by the U.S.P.S. of a particular parcel of real estate for a new main post office in Middletown, New Jersey. The existing main post office is located at the intersection of Route 35 and King's Highway. The United States leases the land for the existing post office from Azzolina Land Corporation. The president of the corporation is Joseph Azzolina, the plaintiff in this matter.

In the spring of 1982, a decision was made to build a new, larger post office to replace the existing one. In June 1982, Seymour Weiner, a U.S.P.S. employee in the Real Estate Division of the United

States Postal Service's Northeast Region, was assigned the task of seeking a suitable site. On June 26, 1982, Mr. Weiner sent to eleven area post offices an advertisement soliciting offers for a site in the general area of the main office. A press release followed. Mr. Weiner also sent approximately 25 flyers with the advertisement to owners of property that might be suitable. A courtesy copy was sent to the township. Mr. Weiner met with Richard Cramer, Middletown's Planning Director. He asked Mr. Cramer to notify other township officials about the post office relocation project and volunteered to meet with any township representatives and interested groups. He also informed Mr. Cramer that the U.S.P.S. would give priority to any real estate offered by the township itself. Mr. Cramer offered no specific recommendations concerning suitable sites.

Mr. Weiner received eight bids for property located in the desired area. One of the bids was offered by Azzolina Land Corporation and was on King's Highway, directly across the street from the existing post office. A Site Evaluation Team, which included Mr. Weiner, visited the eight sites in September 1982. The team unanimously selected an unimproved site located on Route 35 close to Harmony Road. This site is adjacent to a Channel Lumber Store near a Sears shopping complex and approximatley 1.4 miles north along Route 35 from the existing post office.

Mr. Weiner sent letters to the state and area clearinghouses designated in the Office of Management & Budget Circular No. A–95 to be notified of certain federal projects. After inquiry, he was informed by the Tri-State Planning Commission that the New Jersey Bureau of State and Regional Planning, Department of Community Affairs (Trenton, New Jersey), was the single body to be notified of such projects in New Jersey. He wrote again to the New Jersey Department of Community Affairs, notifying it that a specific site had been selected and enclosing additional information about the Harmony Road property. Mr. Weiner's letter was acknowledged, but he received no comments about his selection.

Mr. Weiner determined that the proposed building on Harmony Road did not require an Environment Impact Statement (EIS) or an Environmental Assessment (EA). According to the U.S.P.S. Environmental Protection Handbook, buildings of less than 20,000 square feet are considered not to have a significant environmental impact unless there are extraordinary circumstances. The proposed building is to cover only 8,568 square feet and Mr. Weiner noted no extraordinary circumstances.

Mr. Cramer presented the site selection to the Middletown Planning Board at their meeting on November 10, 1982. Mr. Weiner offered to attend the meeting, but was told that it was not necessary. It appears that the Planning Board did not object to the site, but was concerned about the design of the building, the parking lot and landscaping.

On November 12, 1982, the U.S.P.S. accepted the offer to buy the Harmony Road site. The purchase went to settlement on December 14, 1982, and a press release followed.

However, in early January 1983, Mr. Weiner learned that there were objections to the new post office site. On February 7, 1983, Mr. Weiner and other U.S.P.S. representatives attended a public meeting of the Township Committee. Mr. Weiner advised them that the U.S.P.S. would seriously consider any alternative site that might be offered.

Shortly after the meeting, Mr. Azzolina offered to lease to the U.S.P.S. for $1.00 a year the site that he had originally offered in his bid. The U.S.P.S. hired an independent consulting firm to prepare a Limited Environmental Assessment. In addition, an independent engineering firm prepared a preliminary analysis of site preparation costs for the plaintiff's site and the Harmony Road site. The estimated preparation costs of the plaintiff's site were in excess of $600,000, while the costs for the Harmony Road site were estimated at $20,000.

On the basis of these reports, the U.S.P.S. did not accept Mr. Azzolina's offer.

Meanwhile, the Township attempted to find an alternative site. However, on June 21, 1983, Mayor Paul Linder wrote a letter to Mr. Weiner which stated as follows:

I regret to advise you that our proposal to offer this site for your use is not feasible, since it lies within a natural detention basis. Our concerns to obtain a site situated near the present Post Office location that provides easy access are still unresolved, as efforts to locate such a site have been fruitless. Thank you for your patients in waiting to see if we could develop a counter-proposal to your proposed site next to Channel Lumber Company.

Accordingly, Mr. Weiner advised the mayor that the U.S.P.S. would soon be selecting an architect for the facility on Harmony Road.

Mr. Azzolina filed a service complaint with the Postal Rate Commission pursuant to 39 U.S.C. § 3662. The complaint was dismissed on the motion of the U.S.P.S. by an order issued September 2, 1983. The complaint in this court was filed on December 12, 1983. Mr. Azzolina's claims are based on his assertion that the new post office will not be in the historic center of the township. He asserts that by not filing an EIS, the U.S.P.S. violated the National Environmental Policy Act, 42 U.S.C. § 4321, *et seq.* ("NEPA"). He also asserts that the U.S.P.S. did not comply with the Intergovernmental Cooperation Act, 31 U.S.C. § 6501, *et seq.*, ("ICA"), and Executive Order 12372, which require federal agencies to consult with state and local representatives in connection with certain federal projects. Finally, the plaintiff claims that the site selection was arbitrary, capricious and an abuse of discretion.

Before implementing a major federal action which will have a significant effect on the quality of the human environment, a federal agency must prepare an EIS. 42 U.S.C. § 4332(2)(C). The Third Circuit has assumed without deciding that the proper standard to apply in reviewing an agency

decision not to prepare an EIS is whether the decision was reasonable under the circumstances. *Township of Springfield v. Lewis,* 702 F.2d 426 (3d Cir.1983).

Azzolina does not contend that the construction of the post office would cause any tangible physical environmental damage. Rather, his claim is that the township is in the process of relocating municipal services from outlying areas to the historic center of the community at King's Highway and Route 35. Thus, Mr. Azzolina asserts that the new location for the post office would interfere with the "community's plans for unified municipal services and hopes for a beneficial consolidation of mailing addresses."

■ The case law is clear than an EIS is not required unless the primary impact of the project is on the natural environment. Once this threshold requirement is met, secondary socio-economic effects should be considered. However, socio-economic effects alone are insufficient to trigger the requirement of an EIS. *Goodman Group, Inc. v. Dishroom,* 679 F.2d 182 (9th Cir.1982); *Image of Greater San Antonio, Texas v. Brown,* 570 F.2d 517 (5th Cir. 1978); *Breckinridge v. Rumsfeld,* 537 F.2d 864 (6th Cir.1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *Township of Dover v. U.S.P.S.,* 429 F.Supp. 295 (D.N.J.1977).

Certainly, there is not always a bright line between physical and socio-economic impact. Thus, courts have required an EIS when the proposed project threatened the character of an area, but only after finding that the federal action "either threatened the physical resources of the area, by posing significant traffic, population-concentration, or water-supply problems, or proposed the irreversible alteration of the historic attributes of rare sites." *Goodman Group, supra,* at 185 (and cases cited therein).

In this context, the plaintiff's reliance on the case, *City of Rochester v. U.S.P.S.,* 541 F.2d 967 (2d Cir.1976), is misplaced. In *Rochester,* the U.S.P.S. proposed to close

an inner-city mail processing facility and open a new facility in a suburban area seven miles out of the city. The Court of Appeals found that by not preparing an EIS, the U.S.P.S. "wholly neglected consideration of possibly major environmental effects associated with this project." *Id.* at 973. The court cited the transfer of 1400 employees as having substantial environmental effects including increasing commuter traffic by car between the in-city residents and the new job site; loss of job opportunities for inner city residents who could not make the commute; the moving of employees to the suburbs to be closer to their job, leading to economic and physical deterioration of downtown Rochester; and abandonment of the present downtown facility which could contribute to "an atmosphere of urban decay and blight, making environmental repair of the surrounding area difficult if not infeasible." *Id.* In addition, the court noted that a project of this size would have a significant effect on the physical environment of the proposed suburban site. *Id.* at n. 7. Thus, the court in *Rochester* was concerned with physical deterioration of the inner city and traffic problems, along with the accompanying socio-economic impact. *See also, Township of Dover, supra,* (Moving the processing operation of the post office from Dover to Hamilton, New Jersey did not have any physical impact requiring an EIS).

■ Unlike the situation in *Rochester,* the plaintiff has cited no physical impact which would result from the proposed move of the Middletown post office 1.4 miles up the road. An inner-city is not being abandoned to decay, employees' places of residence will not be affected, an historical area is not being demolished and there is not even evidence that traffic patterns will be altered in any significant manner. While the location of the new post office may frustrate the township's *hopes* of centralizing all municipal services, there is no physical impact on the *existing* environment which would trigger the need for an EIS. Since Mr. Azzolina has come forward with no evidence of a primary impact on the physical environment, the U.S.P.S.'s

decision that no EIS was necessary was reasonable under the circumstances. Since the court finds that no EIS was required, it will not reach the question of whether the implementing guidelines of the U.S.P.S. violate the NEPA.

The plaintiff also alleges that the U.S.P.S. violated the ICA and E.O. 12372. The relevant portion of the ICA now appears at 31 U.S.C. § 6506(a), (b) and (c). The ICA and the Executive Order create procedural requirements for federal agencies involved in providing federal financial assistance and direct federal development for states and localities. The federal agencies are to provide opportunities for consultation and communication and to make efforts to accommodate state and local concerns.

In making his claim under the ICA, the plaintiff relies on *Rochester, supra.* The court in that case described the obligations of a federal agency under the ICA as follows:

> While the ICA does not expressly provide that the Postal Service necessarily must confer with, much less incorporate the views of, local planning agencies regarding its development decisions, it does require that the local views be 'fully considered' for the purposes of 'plan formulation, evaluation, and review.' 42 U.S.C. § 4231(b).... Under the ICA ... the agency has an affirmative obligation to develop a reviewable record, including a list of the factors which support its decision to act in disharmony with local planning objectives, so that a reviewing court can determine whether the agency has acted arbitrarily or capriciously in claiming it has fully considered, but rejected, local planning objectives. (Citations omitted).

541 F.2d at 976.

■ From the record before the court it appears that the U.S.P.S. was exemplary in fulfilling the mandate of the ICA. Mr. Weiner notified state and local officials of his search for a new site; he consulted with the planning director; when complaints arose, the construction on Harmony Road

was tabled for six months until other possibilities could be fully explored. The record is clear why the site offered by Mr. Azzolina was rejected. Moreover, the township itself was unable to propose an alternative site and the mayor thanked Mr. Weiner for his patience. Rather than trampling on local interests, Mr. Weiner appears to have been especially sensitive to the township's concerns. Simply, there was no alternative site available. Accordingly, the court will grant summary judgment to the U.S.P.S. on the plaintiff's claim under the ICA.

■ Finally, the plaintiff asserts that the U.S.P.S.'s site selection was arbitrary and capricious. In deciding this claim, the court relies on *Tedesco v. U.S.P.S.*, 553 F.Supp. 1387 (W.D.Pa.1983), to find that the plaintiff does not have a private right of action to bring service-related complaints in federal district court.

In conclusion, summary judgment is granted to the U.S.P.S. The claim that the U.S.P.S. acted arbitrarily and capriciously is dismissed for lack of subject matter jurisdiction. Finally, Mr. Azzolina's motion for summary judgment is denied.