TOWNSHIP OF CLINTON, Plaintiff,

v.

UNITED STATES POSTAL SERVICE, Gaetano T. De Sapio and Martin J. De Sapio, Defendants.

Civ. A. No. 85–1272.

United States District Court, D. New Jersey.

June 18, 1986.

Vaida & Vaida, P.C. by David Vaida, Flemington, N.J., for plaintiff.

Thomas W. Greelish, U.S. Atty. by Vincent E. Gentile, Asst. U.S. Atty., Newark, N.J., for defendant Postal Service.

Gaetano M. De Sapio by John P. Gallina, Baptistown, N.J., for De Sapio defendants.

## OPINION

CLARKSON S. FISHER, Chief Judge.

Before the court are cross-motions for summary judgment. Plaintiff, a municipal corporation of the State of New Jersey, requests (1) that the court enjoin the United States Postal Service and the De Sapio defendants, operators of a construction firm, from building a postal substation in the Annandale section of Clinton Township, and (2) that the Postal Service be required to follow certain administrative notification procedures in the event of future efforts to implement construction. The Postal Service and the De Sapios seek summary judgment in their favor dismissing the action. Jurisdiction over the subject matter is based on 28 U.S.C. §§ 1331, 1339, 1346.

The court has considered affidavits, documentary evidence and oral argument. For the reasons contained herein, defendants' cross-motion for summary judgment is granted. Plaintiff's motion is denied.

Material events in this case began to unfold in 1981. Until June of that year the Postal Service had leased space in a building owned by the Township of Clinton in the unincorporated Village of Annandale. (Affidavit of Stephen A. Marcinek at ¶ 2).[1] In June 1981 the township required the Postal Service to vacate that building and as an "interim measure" the Postal Service moved its post office to a small trailer behind the municipal building. The Postal Service has since operated out of that trailer "under extremely inconvenient conditions." *Id.*

Also in June 1981, the Postal Service invited bids for the construction of a new facility to be leased by the Postal Service on a parcel of land in Annandale. Advertisements were placed in the classified real estate section of the local newspaper, in the Annandale post office, and in five neighboring post offices. The De Sapios were the only bidders. They proposed a facility on property (for which they held an option to purchase) known as the "Coss parcel on West Street." The westerly side of West Street terminates in a dead end and is adjacent to a school for small children. (Plaintiff's Brief at 1). The De Sapios' bid was accepted by the Postal Service on November 21, 1981. (Marcinek Affidavit at ¶ 3).

To conform with the mandate of the Intergovernmental Cooperation Act[2] of

---

1. Mr. Marcinek is manager of the real estate branch of the New York Field Real Estate and Buildings Office of the United States Postal Service.

2. The Act provided the following in the form in which it appeared in 1981:

   All viewpoints—national, regional, State, and local—shall, to the extent possible, be fully considered and taken into account in planning Federal or federally assisted development programs and projects. State and local government objectives, together with the objectives of regional organizations shall be considered and evaluated within a framework of national public objectives, as expressed in Federal law and available projections of future national conditions and needs of regions, States, and localities shall be considered in plan formulation, evaluation, and review.

42 U.S.C. § 4231(b). To implement this mandate the Office of Management and Budget (OMB) has promulgated the following procedures:

   2. *Coordination of direct Federal development projects with State, areawide, and local development.* a. Federal agencies having responsibility for the planning and construction of Federal buildings and installations or other Federal public works or development or for the acquisition, use, and disposal of Federal land and real property will establish procedures for:

   (1) Consulting with Governors, State and areawide clearinghouses, and local elected officials at the earliest practicable stage in project or development planning on the relationship of any plan or project to the development plans and programs of the State, area,

1968 (ICA), 42 U.S.C. § 4201 (1977), *repealed,* P.L. 97–258, 96 Stat. 1068, Sept. 13, 1982, *recodified at* 31 U.S.C. § 6501 (1983), the Postal Service mailed "A–95 notices" of the construction project to the Tri-State Regional Planning Commission and the New Jersey Department of Environmental Protection on or about September 8, 1981. No such notice was sent to the HCPB, the designated clearinghouse for Hunterdon County. This failure is attributed to "oversight." (Marcinek Affidavit at ¶ 4).

Plaintiff's case hinges entirely on the weight and significance to be accorded the failure of the Postal Service to submit the A–95 notice to the correct clearinghouse. Is the error a mere "technical deficiency" overcome by subsequent actual and constructive notice to appropriate local authorities, or is it a "jurisdictional defect," irremediable by subsequent acts and necessitating that the court nullify both the selection of the Annandale site and the contract awarded to the De Sapios?

The basic issue thus described can be sharpened by a further statement of material facts. After November 12, 1981, the date of the Postal Service's acceptance of the De Sapios' bid, there were several contacts between Postal Service representatives and local officials, including the then mayor who was also a member of the Clinton Township Planning Board (the Board). As a result of these contacts the Board assertedly became aware of the plan to relocate the post office to the new Annandale site. (Marcinek Affidavit at ¶ 5; Affidavit of L. Richard Kaufman[3]).

In late November Gaetano T. De Sapio appeared before the Board subdivision and site plan review committee and generally outlined the building project. "The Planning Board voiced no objection at that time." (Marcinek Affidavit at ¶ 6; see also Affidavit of Gaetano T. De Sapio at ¶ 7). Similarly, in February 1982 De Sapio met with the township council to discuss sewer

---

or locality in which the project is to be located. In the case of projects in the National Capital Region, such consultation should be undertaken in cooperation with the National Capital Planning Commission.

(2) Assuring that any such Federal plan or project is consistent or compatible with State, areawide, and local development plans and programs identified in the course of such consultations. Exceptions will be made only where there is clear justification. Explanation of any necessary inconsistency or incompatibility will be provided, in writing, to the appropriate clearinghouses.

(3) Providing State, areawide, and local agencies which are authorized to develop and enforce environmental standards with adequate opportunity to review such Federal plans and projects pursuant to section 102(2)(C) of the National Environmental Policy Act of 1969. Any comments of such agencies will accompany the environmental impact statement submitted by the Federal agency.

OMB Circular No. A–95 (Revised), "Evaluation, Review, and Coordination of Federal and Federally Assisted Programs and Projects," 41 Fed. Reg. 2056 (Jan. 13, 1976).

In turn, to satisfy the foregoing administrative notice directives, federal agencies customarily submit so-called "A–95s" to notify appropriate "clearinghouses" of anticipated projects. Clearinghouses are described in the Federal Register as

Areawide clearinghouses in metropolitan areas ... established pursuant to the require-

ments of section 204 of the Demonstration Cities and Metropolitan Development Act of 1966. State and other areawide clearinghouses are designated by Governors of the States pursuant to rules and regulations developed by the Office of Management and Budget under authority of Title IV of the Intergovernmental Cooperation Act of 1968.

42 Fed.Reg. 2210 (Jan. 10, 1977). The Federal Register indicates that for eleven New Jersey municipalities and counties the "areawide clearinghouse" is the Tri-State Regional Planning Commission in New York City, but for Hunterdon County (where Clinton is located) the designated clearinghouse is the Hunterdon County Planning Board (HCPB) in Flemington. 42 Fed. Reg. 2225 (Jan. 10, 1977). The Postal Service has stipulated as much and also that no A–95 notice was sent to the HCPB on or before November 12, 1981. (See Stipulation filed April 8, 1986).

3. This affidavit is attached to the Marcinek affidavit as "Exhibit 3." The Kaufman affidavit further states that although "concerns about the Coss property site were strongly expressed, there was also repeatedly expressed general opposition to any site within Annandale, a desire to have a post office relocated outside of Annandale and the sentiment that such a relocation would allow Township residents to get R.F.D. service of the mail rather than lockbox delivery at the Annandale post office."

service for the new facility. The Council approved De Sapio's plans for tying into the envisioned sewer system. "They made no objection to the location of the post office on the proposed site." (Gaetano T. De Sapio Affidavit at ¶ 8). Also at that time Carolyn Neighbor was a member of both the Board and HCPB.

Although the asserted passiveness on the part of the township council, as related above, cannot be weighted heavily in the overall analysis, it is clear and fair to presume from all these facts that as early as November 1981, and certainly by February 1982, all concerned local authorities had acquired knowledge of the proposed postal project, notwithstanding the lack of A–95 notice.

In the spring of 1982 De Sapio sought the township's subdivision and site plan approval and relief from various zoning restrictions. The Board rejected the application, asserting that the site was poorly located in proximity to an elementary school, would generate too much traffic, and would violate set-back and other restrictions. In a letter dated August 2, 1983, William A. Shurts, Clinton Township Planning Board Attorney, proposed six alternative sites. (Schedule A, Affidavit of Gaetano M. De Sapio filed May 27, 1986). Each of these was studied by the Postal Service but was either found unavailable or deemed unsuitable. (Marcinek Affidavit at ¶ 7).

Mr. Marcinek further stated that
[i]n addition to investigating the alternative sites proposed by the Township, the defendants endeavored to satisfy the Township's particular reservations about the West Street site. In January and February 1985, twelve separate concerns were ... summarized in a letter from the chairperson of the Clinton Township Planning Board, Carolyn Neighbor. The Postal Service agreed to satisfy all twelve of the itemized concerns ... and

has or will incur approximately $60,000 in further expenses as a result.... As a matter of practice, where no county road is affected by the federal action, the Postal Service generally does not accord great weight to the local county planning board (the designated A–95 recipient in this case). In this case, the site of the proposed new post office, West Street, was not a county road.

(Marcinek Affidavit at ¶¶ 9, 11).

An action in lieu of prerogative writ was commenced in New Jersey Superior Court on February 16, 1983. The final outcome of that suit was a judgment, dated January 11, 1985, that the activities of the De Sapio defendants in connection with acquiring title to and constructing the post office were immune and exempt from the operation of the ordinances of Clinton Township. The present suit was commenced March 18, 1985. A motion made by plaintiff to dismiss the De Sapios' counterclaims was denied December 27, 1985.[4]

As indicated above, plaintiff grounds its motion for injunctive relief on the two-fold argument that (1) the Postal Service's failure to provide notice of the proposed project to the HCPB by means of an A–95 prior to November 21, 1981, is a jurisdictional defect fatal to the selection of the Annandale site and to the contract formed between the Postal Service and the De Sapios, and (2) any contact between the Postal Service and plaintiff after November 21, 1981, may not be deemed sufficient alternative notice or compliance with the requirements of the ICA. The court is not moved by either contention.

It is of overriding significance to the court that there appears to be no basis for plaintiff's implicit premise that the filing of an A–95 form with the HCPB was, or is, a *sine qua non* to the Postal Service's authority to construct a substation in Annandale.[5] The ICA and OMB Circular A–95

<hr/>

4. The counterclaims allege causes of action under 42 U.S.C. §§ 1983 and 1985 as well as tortious interference with contract and prospective economic advantage.

5. Plaintiff concedes that "no case has been discovered which deals with the legal effect of failing to provide a designated clearing house with the A–95 circular." (Plaintiff's Brief at 5). This was expressly reiterated, upon the court's

(Revised) do not create, nor is there evidence that they were intended to foster, "jurisdictional" prerequisites. See 1968 U.S.Code Cong. & Ad.News, 4220–4232. Rather, they simply mandate "cooperation," "consultation," "coordination," and the like, between the various organs of federal and local goverment. *Azzolina v. United States Postal Service*, 602 F.Supp. 859, 863 (D.N.J.1985) (obligation of federal agency is to "provide opportunities for consultation and communication and to make efforts to accommodate state and local concerns"); see also Exec. Order No. 12,372, 47 Fed.Reg. 30959 (1982). No provision in the ICA expressly or implicitly vests local planning boards with the power to veto proposed federal construction projects. And that, essentially, is the power that Clinton Township would seek to assert in this case.

Similarly, there is no support for plaintiff's suggestion that A–95s must *precede* the government's acceptance of contract bids. The ICA creates an opportunity for local authorities to be heard and "to the extent possible" commands only that federal authorities listen.

In this case, admittedly, the Postal Service failed to send the A–95 form to the HCPB. There is no allegation or evidence of bad faith or intentional effort to sidestep prescribed procedures, however. Indeed, notices were sent to the Tri-State Regional Planning Commission and New Jersey Department of Environmental Protection in September 1981. Plaintiff has not challenged the Postal Service's assertion that its error was simple oversight. Moreover, local authorities clearly were advised of the De Sapios' contract by February 1982, at the latest, and have demonstrated no real prejudice from not having received an A–95 form at an earlier date. Although the court does not condone and is reluctant to overlook the Postal Service's failure to ob-

serve the letter of administrative notice requirements, it is even more reluctant to grant injunctive relief where effective notice was achieved by alternate means and particularly where the ends of the ICA, the real focus of this case, have been adequately served.

In this latter respect, the court takes note again that Postal Service representatives attended meetings with the Board and Clinton residents (Kaufman Affidavit at ¶ 15); that the Postal Service was attentive and responsive to the Board's suggestion of alternative sites (Marcinek Affidavit, Exhibit 6); and that the Postal Service requested a statement of concerns regarding the Coss parcel, received a list of twelve items, and negotiated with the contractors to eliminate the problem areas at an additional federal expense of approximately $60,000 (Marcinek Affidavit at ¶ 9, Exhibits 7, 8). On this record, it is evident that the Postal Service complied amply with the purposes of the ICA.

It is obvious that the Clinton authorities are displeased with the Postal Service's selection of the Coss parcel for its new substation. The ICA, however, creates only an avenue for the expression of that sentiment and holds out no guarantee of relief or satisfaction. Nor does the ICA empower the township to overrule the selection of the Annandale site. *County of Bergen v. Dole*, 620 F.Supp. 1009, 1065 (D.N.J.1985) (the ICA "does not require that a federal agency incorporate the views of local planning agencies, but rather requires such views to be fully considered"). Thus, the injunctive remedy sought by Clinton Township cannot emanate from the Postal Service's asserted failure to comply with 42 U.S.C. § 4231(b).

Accordingly, plaintiff's motion for summary judgment and injunction will be denied. Defendants' cross-motions for sum-

---

inquiry, at oral argument. The court's research too has disclosed no pertinent case law. *North Alabama Express, Inc. v. United States*, 585 F.2d 783 (5th Cir.1978), the lone authority cited by plaintiff in support, is distinguishable. That case did not address the issue of A–95 notice but

dealt on a higher constitutional plane with the due-process right of a trucking company to receive notice of action by the Interstate Commerce Commission on a competitor's application for expanded routes.

mary judgment dismissing the action will be granted. An order accompanies this opinion. No costs.