INLAND EMPIRE PUBLIC LANDS COUNCIL, a Washington non-profit corporation; Kettle Range Conservation Group, a Washington non-profit corporation; Pend Oreille Environmental Team, a Washington non-profit corporation; The Spokane Mountaineers, a Washington non-profit corporation; Spokane Audubon Society, a Washington non-profit corporation; Inland Northwest Wildlife Council, a Washington non-profit corporation; Washington Wilderness Coalition, a Washington non-profit corporation; Sierra Club, a California non-profit corporation; Wilderness Society, a District of Columbia non-profit corporation; Plaintiffs–Appellants,

v.

Edward L. SCHULTZ, in his official capacity as Supervisor, Colville National Forest, United States Forest Service; John E. Lowe,* in his capacity as Regional Forester, Region Six, United States Forest Service; F. Dale Robertson, in his capacity as Chief, United States Forest Service; United States Forest Service, an agency of the United States, Defendants–Appellees,

and

Merritt Brothers Lumber Company; Northwest Forestry Association, Inc., and Public Land Users' Coalition, Defendants–Intervenors–Appellees.

No. 92–36970.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1993.

Decided May 7, 1993.

---

* John E. Lowe is substituted for his predecessor, John F. Butruille, as Regional Forester, Region Six, United States Forest Service. Fed.R.App.P. 43(c)(1).

Mark E. Wilson, Spokane, WA, for plaintiffs-appellants.

Evelyn S. Ying, Dept. of Justice, Washington, DC, for defendants-appellees.

Scott W. Horngren, Haglund & Kirtley, Portland, OR, for intervenor.

Before: WRIGHT, THOMPSON and KLEINFELD, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

Environmental groups challenged a timber sale in northeastern Washington, alleging, in effect, that the Forest Service can't see the forest for the trees. They contend that the agency did not consider the cumulative environmental effects of the sale on the Calispell River watershed as required by federal law. Having won once and lost once in the agency appeal process, they filed an action in district court to compel another agency appeal and to enjoin the sale. They lost on both issues. We affirm.

### I.

The Forest Service offered the Calispell Timber Sale pursuant to the Colville National Forest Land and Resource Management Plan. When the agency adopted the plan and its supporting final environmental impact statement (FEIS) in December 1988, nine environmental organizations, including several appellants in this proceeding, administratively appealed the plan and FEIS. They alleged that the documents did not consider properly the cumulative effects of past logging and road-building activities on watersheds in the forest, in violation of the National Forest Management Act, see 16 U.S.C. §§ 1600–1614 (1988), and NEPA, 42 U.S.C. §§ 4321 et seq. (1988). The Chief of the Forest Service ruled against the environmentalists and affirmed the plan.

In February 1992, appellants (Council) filed a complaint in district court challenging the plan. The Calispell Sale was one of several sales alleged to violate NFMA and NEPA. After the Forest Service gave notice that it would proceed with the sale, Council amended its complaint and sought to enjoin timber harvest pursuant to the sale.

When the forest supervisor originally announced the sale in October 1990, he issued an environmental assessment and a finding of no significant impact. Pend Oreille Environmental Team administratively appealed the sale, arguing that the Forest Service had not addressed the sale's cumulative effects on the watershed, as required by NFMA and NEPA. The Chief agreed and reversed the sale, ordering the supervisor to prepare a supplemental EA if he intended to reoffer it.

The supervisor modified and expanded the cumulative effects analysis to respond to POET's concerns. On October 19, 1992, he re-announced the sale and issued a supplemental Environmental Analysis. He also wrote a letter to POET, informing it that reanalysis of the sale's environmental effects did not result in a new decision subject to administrative appeal. The next day, he awarded the sale to Merritt Brothers, high bidders in the original sale.

By November 8, 1992, Merritt Brothers had begun harvesting timber. On November 11, the district court issued a temporary restraining order, pending its resolution of Council's motion for a preliminary injunction.

On December 1, the court held that the decision to reoffer the sale was not subject to administrative appeal and thus was ripe for judicial review. It denied the motion for a preliminary injunction and dissolved the TRO, concluding that Council had not established a likelihood of success on the merits. It also found that the Forest Service had considered adequately cumulative effects and held that the agency's decision not to prepare a site-specific EIS was reasonable. Council appeals.

### II.

**A. Denial of Administrative Appeal of the Reoffered Sale**

■■■ Council argues that the supervisor may not simply prepare a new and different EA and then implement his original decision, disallowing further administrative appeal on the ground that no new decision has been made. It contends that by foreclosing administrative review, the agency has prevented Council from making an administrative

record, thus limiting its ability to obtain meaningful judicial review.[1]

An agency's interpretation of its own regulations controls unless "plainly erroneous or inconsistent with the regulation." *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359, 109 S.Ct. 1835, 1850, 104 L.Ed.2d 351 (1989); *Marathon Oil Co. v. United States,* 807 F.2d 759, 765 (9th Cir.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). Because the Forest Service's administrative appeals process is not mandated by Congress, but has been implemented at the agency's discretion, we defer to its decision not to allow a second appeal. *See McCarthy v. Madigan,* — U.S. —, —, 112 S.Ct. 1081, 1086, 117 L.Ed.2d 291 (1992). We hold that its decision to reoffer the sale was a final agency action.

## B. The District Court's Denial of a Preliminary Injunction

### 1. Standard of Review

■ When a district court denies a preliminary injunction because there is no likelihood of success on the merits, we review its decision de novo. *City of Tenakee Springs v. Clough,* 915 F.2d 1308, 1313 (9th Cir.1990). In evaluating whether Council could succeed on the merits, we must determine if the Forest Service erred in deciding not to prepare an EIS. The district court reviewed the agency's decision under the reasonableness standard. Since then, however, we held that such decisions should be reviewed under the arbitrary and capricious standard. *See Greenpeace Action v. Franklin,* 982 F.2d 1342, 1350 (9th Cir.1992). Under this standard, we still must ensure that an agency has taken a "hard look" at the environmental consequences of its proposed action. We

conduct a "searching and careful inquiry into the facts," carefully reviewing the record to ascertain whether the agency decision is founded on a reasoned evaluation of the relevant factors. *Id.* If the agency's discretion is truly informed, we must defer to it. *Id.*

### 2. Council's Likelihood of Success on the Merits

■ NEPA requires that an EIS be prepared for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(C). An agency proposing a major action[2] must assess the significance of environmental effects on the local area by considering cumulative impacts of a proposed site-specific action, together with past and reasonably foreseeable related actions. 40 C.F.R. § 1508.27(a) and (b)(7). We must determine whether Council "has alleged facts which, if true, show that the proposed project *may* significantly degrade some human environmental factor." *Sierra Club v. United States Forest Serv.,* 843 F.2d 1190, 1193 (9th Cir.1988). If so, an EIS must be prepared. *Greenpeace,* 982 F.2d at 1351.

Council contends that the Forest Service should have prepared an EIS addressing cumulative environmental effects of the sale on the Middle Fork Calispell River watershed. Council maintains that the methodology used by the Forest Service to assess cumulative effects is inaccurate. It also argues that the agency violated both federal regulations and its own procedures by intentionally excluding from its analysis the consequences of its future logging plans in the watershed. Finally, it asserts that the Forest Service's methodology predicts significant environmental degradation because projected cumulative watershed effects rise above the agency's designat-

---

1. NEPA requires agencies to consider the environmental consequences of their proposed actions before they are implemented. *Marsh v. Oregon Natural Resources Council,* 490 U.S. 360, 371, 109 S.Ct. 1851, 1858, 104 L.Ed.2d 377 (1989); *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 349, 109 S.Ct. 1835, 1845, 104 L.Ed.2d 351 (1989). We acknowledge Council's concern that an agency may shield itself from judicial review of this requirement by failing to provide an opportunity for a challenger to document the grounds of its challenge in the administrative record. Council's concern is un-

warranted here, however, because the parties generated an extensive record, sufficient for us to reach the merits.

2. The district court concluded that the sale was not a major federal action, but rather a small subpart of the forest plan. No party raises this issue on appeal. All parties assume implicitly, however, that the sale was a major federal action. For purposes of our NEPA analysis, we assume, without deciding, that the proposed sale was a major federal action.

ed "threshold of concern." This threshold represents the proportion of a watershed that may be logged before the agency believes a more detailed environmental analysis is warranted.

The district court found that the supplemental EA included a lengthy analysis of possible cumulative effects. Although the analysis revealed that cumulative effects would surpass the threshold of concern, primarily because of logging on private lands adjacent to the national forest, the Forest Service concluded that the sale itself would cause little environmental harm. The court accepted this conclusion, upholding as reasonable the decision not to prepare an EIS.[3]

### a. Cumulative Effects Methodology

Council disagrees with the Forest Service's methodology. We are in no position to resolve this dispute because we would have to decide that the views of Council's experts have "more merit than those of the [Forest Service's] experts." *Id.* at 1352. " 'NEPA does not require that we decide whether an [EA] is based on the best scientific methodology available, nor does NEPA require us to resolve disagreements among various scientists as to methodology.' " *Id.* (quoting *Friends of Endangered Species, Inc. v. Jantzen*, 760 F.2d 976, 986 (9th Cir.1985)).

■ We defer to agency expertise on questions of methodology unless the agency has completely failed to address some factor, " 'consideration of which was essential to a truly informed decision whether or not to prepare an EIS.' " *Id.* (quoting *Foundation for N. Am. Wild Sheep v. United States Dep't of Agric.*, 681 F.2d 1172, 1178 (9th Cir.1982)). Council did not demonstrate the omission of any factor necessary to an informed decision. We will not second-guess methodological choices made by an agency in its area of expertise.

### b. Decision to Omit Cumulative Effects Analysis of Possible Future Actions on Forest Service Land

In calculating cumulative effects, the supplemental EA specifically excluded approximately 1200 acres of national forest land identified in the forest plan as possible harvest areas. Council contends that because this harvest cannot be eliminated without amending the plan, the harvest is "reasonably foreseeable" and must be included in the analysis.

The Forest Service responds that its ten-year plan did not mandate or authorize any particular action on these 1200 acres, that the dimensions of any future harvest are speculative and that it has made no "irretrievable commitment of resources" towards any such harvest. *See* 42 U.S.C. § 4332(2)(C)(v); *Conner v. Burford*, 848 F.2d 1441, 1446 (9th Cir.1988), *cert. denied*, 489 U.S. 1012, 109 S.Ct. 1121, 103 L.Ed.2d 184 (1989). Instead, the agency intends to comply with NEPA requirements before the authorization of each future sale in the watershed.

■ Both connected actions and unrelated but reasonably foreseeable future actions may result in cumulative impacts that can trigger an EIS. *Save the Yaak Comm. v. Block*, 840 F.2d 714, 721 (9th Cir.1988). If cumulative effects of past and reasonably foreseeable logging in the Calispell watershed would result in substantial environmental impacts, the Forest Service cannot ignore those impacts by considering environmental effects of each individual timber sale in isolation. We realize that to do so would violate both federal regulations and the Forest Service's own rules for implementing NEPA. *See* 40 C.F.R. §§ 1508.7 and 1508.27(b)(7); Forest Service Handbook, FSH 1905.15,

**3.** Council argues that both the Forest Service and the district court considered only incremental impacts of this sale, not the cumulative impact as defined by the CEQ regulations:

> "Cumulative impact" is the impact on the environment which results from the incremental impact of the action when added to other past, present, and reasonably foreseeable future actions regardless of what agency (Federal or

non-Federal) or person undertakes such other actions. Cumulative impacts can result from individually minor but collectively significant actions taking place over a period of time. 40 C.F.R. § 1508.7. As we indicate in the next subsection, Council's dispute is primarily one of methodology. We cannot say that the agency's decision to proceed based on this cumulative effects methodology was arbitrary or capricious.

§ 15.1 (reported at 57 Fed.Reg. 43180, 43199 (Sept. 18, 1992)).

Here, however, the Forest Service has considered effects of the sale in the context of past and reasonably foreseeable logging within the watershed. The agency constructed mathematical models to predict increases in runoff and stream flows as a function of acres logged and rate of regeneration following logging. It conducted extensive field investigations to calibrate and verify its models. It sought public comment and responded to concerns raised by Council and others during its environmental analysis, modifying the analysis and incorporating many of Council's suggestions.

Significant environmental effects certainly are possible when more than half of a watershed is logged within a 30–year span, as is projected for this watershed. We hold, however, that the agency took the requisite "hard look" at cumulative environmental consequences of this sale, together with past and reasonably foreseeable logging in the watershed. We cannot conclude that the agency's finding of no significant impact was arbitrary or capricious.

### c. *Threshold of Concern*

The Forest Service's environmental analysis predicted that cumulative effects of past, present and reasonably foreseeable logging in the watershed would exceed the "threshold of concern" identified by the agency. Council contends that this prediction indicates sufficient likelihood of significant environmental impact to warrant preparation of an EIS.

The threshold of concern, however, is a model-based threshold that signals the need to evaluate more closely watershed conditions during the project analysis. After the Calispell Sale was appealed successfully to the Chief, the Forest Service conducted more detailed watershed evaluations. Based on those evaluations, it concluded that no adverse effects on the streamflow regime were present and no significant degradation of the watershed was likely. We cannot say that this conclusion was arbitrary or capricious.

* The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P.

### III.

We hold that it was not arbitrary or capricious of the Forest Service to conclude that no significant environmental impact would occur from the Calispell Timber Sale. Council has alleged no facts showing environmental degradation and has not demonstrated that the agency's cumulative effects analysis omitted consideration of some factor necessary to an informed decision.

No EIS is required for this sale to proceed. The district court's order denying a preliminary injunction is **AFFIRMED.**