**John W. MORRIS, et al., Plaintiffs,**

v.

**John T. MYERS, et al., Defendants.**

**CITY OF PORTLAND, a municipal corporation, Plaintiff,**

v.

**John T. MYERS, et al., Defendants.**

**Nos. 93–332BR, CV 93–425BR.**

United States District Court,
D. Oregon.

Sept. 15, 1993.

Richard C. Baldwin, Multnomah County Legal Aid Service, James S. Coon, Royce Swanson Thomas & Coon, Portland, OR, for plaintiffs.

Thomas C. Lee, U.S. Attys. Office, Portland, OR, for defendants.

ORDER: 1) DENYING MOTION TO DISMISS; 2) DENYING ORAL ARGUMENT; and 3) GRANTING MOTION FOR SUMMARY JUDGMENT

BRYAN, District Judge.

THIS MATTER comes before the court on defendants' Motion to Dismiss, or in the Al-

ternative, for Summary Judgment. Defendants also request oral argument. The court has considered the arguments of the parties and has reviewed the record and is prepared to rule on this motion without oral argument.

## INTRODUCTION

The General Services Administration (GSA) proposes to build a new Federal courthouse in downtown Portland, Oregon. Because this project is a major federal action, GSA initiated a review process under the National Environmental Policy Act (NEPA), to identify any potentially significant environmental impacts that would require preparation of an environmental impact statement (EIS). 42 U.S.C. § 4332(2)(C). GSA's scoping process identified several areas of concern, mostly centering on the project's effect on Portland's low-income housing stock. Other issues raised involved parking and traffic circulation patterns, aesthetics and noise, and the demolition of buildings eligible for historic status.

GSA prepared an environmental assessment (EA), which evaluated the project's possible effects in each of the following areas: geology, soils, and seismicity; hazardous waste; biological resources; water resources; traffic, transportation, and circulation; air quality; noise; population, employment, and housing; land use and zoning; urban design and aesthetics; community services; cultural resources; utilities; and decommissioning/future demolition. The EA also considered possible mitigation measures to lessen adverse impacts in several identified areas of concern.

The EA concluded that none of the environmental impacts were expected to be significant. Although the preferred building site presented "the potential for substantial impacts to housing, cultural resources and traffic" (EA at E–3), the EA found that these potentially significant impacts were temporary, did not rise to the level of environmental significance, or could be mitigated adequately to avoid significant environmental impacts. Based on the results of the EA, GSA determined that no EIS was required and issued a Finding of No Significant Impact (FONSI), published in the Federal Reg-

ister on December 30, 1992. See 57 Fed. Reg. 62348.

Plaintiffs challenged GSA's finding, alleging that the EA and FONSI were incomplete and inadequate because they failed to consider secondary environmental impacts caused by the reduction in low-income housing stocks, relied on mitigation measures that were not imposed by statute or regulation, and failed to explain adequately the determinations of nonsignificance. Plaintiffs also claimed that GSA, by not preparing an EIS, acted unreasonably, arbitrarily, capriciously, and in violation of NEPA.

The court previously denied plaintiffs' Motion for Preliminary Injunction and Motion for Preliminary Injunction Pending Appeal, finding that plaintiffs did not show that GSA acted unreasonably, arbitrarily, capriciously, or contrary to law in reaching its Finding of No Significant Impact, and concluding that plaintiffs had not shown sufficient cause to merit a preliminary injunction. Defendants now move to dismiss for failure to state a claim or, in the alternative, for summary judgment. Their legal arguments may be summarized as follows:

(1) Plaintiffs lack standing to bring these actions because the alleged injuries to their interest in low-income housing are not redressable under NEPA and are outside of the zone of interests that NEPA seeks to protect.

(2) Plaintiffs failed to state a claim under NEPA because their interests in low-income housing are outside NEPA's zone of interests.

(3) Plaintiffs waived the right to litigate any interests other than low-income housing by not providing timely comments to GSA regarding other alleged NEPA deficiencies.

(4) Defendants are entitled to summary judgment because GSA's decision-making process under NEPA was not arbitrary or capricious and because the agency acted within its discretion in deciding not to prepare an EIS.

## STANDING

Defendants challenge plaintiffs' standing to bring this action. Because the

standing issue is part of both alternative motions, and because it is a basic requirement for the court to have jurisdiction, *Idaho Conservation League v. Mumma,* 956 F.2d 1508, 1513 (9th Cir.1992), the court will address the issue of standing at the outset.

To establish standing, plaintiffs' claims must satisfy three requirements: (1) plaintiffs must allege an injury in fact, that is, an invasion of an actual or imminent legally-protected interest which is concrete and particularized and not a generalized grievance nor a conjectural or hypothetical one; (2) there must be a causal connection between the injury and the conduct complained of; and (3) it must be likely that the injury can be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* —— U.S. ——, ——, 112 S.Ct. 2130, 2137, 119 L.Ed.2d 351, 364 (1992); *Idaho Conservation League,* 956 F.2d at 1513–18. Where plaintiffs' claims arise under a particular statute, they must allege that their injury falls within the zone of interests to be protected by the statute in question. *Association of Data Processing Service Orgs. v. Camp,* 397 U.S. 150, 153, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

Defendants argue that plaintiffs' claims resolve into a single injury, the loss of low-income housing, which is not redressable under NEPA because the sole remedy, an order to prepare an EIS, would not replace the low-income housing lost as a result of the federal courthouse construction. Defendants also argue that this injury does not fall within the zone of interests sought to be protected by NEPA.

■ NEPA is essentially a procedural statute designed to ensure that environmental issues are given proper consideration in the decision-making process; injury alleged to have resulted from violating this procedural right confers standing. *Idaho Conservation League,* 956 F.2d at 1514. The court has the power to enforce this procedural right. Plaintiffs' alleged NEPA claims, if properly pleaded and supported by sufficient evidence, are redressable; that is, the court can halt construction until an EIS is prepared.

■ Furthermore, as will be discussed more fully below, NEPA encompasses social or economic impacts that are interrelated with or caused by natural or physical impacts flowing from a major federal action. 40 C.F.R. § 1508.14; *Port of Astoria, Oregon v. Hodel,* 595 F.2d 467, 475 (9th Cir.1979). Because plaintiffs claim injuries allegedly resulting from violations of NEPA's procedural requirements that might be shown to be interrelated with natural or physical impacts flowing from a major federal action, plaintiffs have standing.

## DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UNDER NEPA

Defendants move to dismiss under Fed. R.Civ.P. 12(b)(6) on the ground that plaintiffs' interests in low-cost housing are outside the zone of interests protected by NEPA.

A complaint should not be dismissed for failure to state a claim under Fed.R.Civ.P. 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Arcade Water Dist. v. U.S.,* 940 F.2d 1265, 1267 (9th Cir.1991). In reviewing the sufficiency of a complaint, the issue is whether the claimant is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ The Court must presume all factual allegations of the complaint to be true and must draw all reasonable inferences in favor of the nonmoving party. *Holden v. Hagopian,* 978 F.2d 1115, 1118 (9th Cir.1992). The Court need not presume conclusory allegations, however, that do not follow from the facts as alleged by the plaintiff. *Id.* at 1121. Evidence outside the pleadings cannot normally be considered in deciding a 12(b)(6) motion. *Farr v. U.S.,* 990 F.2d 451, 454 (9th Cir.1993).

■ NEPA requires preparation of an EIS for every major federal action significantly affecting the quality of the "human environment," 42 U.S.C. § 4332(2)(C). The

Council on Environmental Quality (CEQ) regulations define "human environment" to include "the natural and physical environment and the relationship of people with that environment." 40 C.F.R. § 1508.14. The CEQ regulations also provide that "economic or social effects are not intended by themselves to require preparation of an environmental impact statement" but shall be discussed when "economic or social and natural or physical environmental effects are interrelated." *Id.* NEPA encompasses economic harms, but only if those harms are caused by environmental damage. *Port of Astoria,* 595 F.2d at 475.

Whether there are natural or physical effects on the environment resulting from the proposed Federal Courthouse and, if so, whether these effects are interrelated with the economic and social effects alleged by plaintiffs are questions of fact. Plaintiffs conceivably could prove that these two types of effects are interrelated causally and present a potentially significant environmental impact not adequately addressed by the EA and FONSI, in which case plaintiffs might be entitled to relief. Defendants' motion to dismiss for failure to state a claim should be denied.

## WAIVER

The City of Portland alleges in its Complaint that several environmental impacts of the proposed federal courthouse were not addressed adequately in the EA and FONSI: (1) increased automobile congestion, (2) city noise in excess of that permitted by ordinance, (3) alteration of the "city-scape" by the addition of another high-rise building, and (4) destruction of a building eligible for inclusion in the National Register of Historic Places. Defendants argue that all plaintiffs have waived any right to litigate these interests by not providing timely comments to GSA regarding alleged NEPA deficiencies.

▮ Issues not timely presented before an administrative proceeding generally are considered waived unless the agency lacked jurisdiction to decide the issues or exceptional circumstances warrant their review. *Marathon Oil Co. v. United States,* 807 F.2d 759, 767–68 (9th Cir.1986), *cert. denied,* 480 U.S.

940, 107 S.Ct. 1593, 94 L.Ed.2d 782 (1987). Plaintiffs have not challenged GSA's jurisdiction to conduct NEPA review of its projects, nor have they demonstrated exceptional circumstances that warrant review of their non-housing claims by the court.

▮ Defendants assert, and the record confirms, that the City of Portland was consulted continuously during the preparation of the EA and that much of the information contained in the EA was obtained from the City. Plaintiffs have not attempted to rebut this assertion, nor is there any indication in the record that they objected to the adequacy of the EA with respect to these non-housing interests at any time during GSA's environmental review. The first record of plaintiffs' concern regarding the EA's adequacy in these areas appears in the City's original Complaint, filed on April 7, 1993.

Plaintiffs' failure to raise their non-housing issues until after the EA and FONSI were issued parallels the facts in several Ninth Circuit cases in which the court refused to consider alleged deficiencies in an EA that were not timely raised during the administrative process. *See, e.g., Sierra Club v. United States Nuclear Regulatory Commission,* 862 F.2d 222, 229 (9th Cir.1988) (plaintiff who failed to raise issues concerning adequacy of EA in Licensing Board hearings precluded it from attacking the EA's adequacy in court); *Friends of Endangered Species, Inc. v. Jantzen,* 760 F.2d 976, 983 (9th Cir. 1985) (agency did not act arbitrarily by failing to consider criticisms not presented to it before issuing a permit under the Endangered Species Act); *City and County of San Francisco v. United States,* 615 F.2d 498, 502 (9th Cir.1980) (agency's decision not to prepare an EIS was not unreasonable where plaintiff was involved in leasing process from the beginning, but did not raise environmental issue regarding suboptimal harbor use until it commenced litigation). Plaintiffs similarly waived their right to litigate any non-housing issues by their failure to object during GSA's scoping process and preparation of the EA.

▮ Plaintiffs' challenges are to the methodological choices made by GSA in as-

sessing the project's possible environmental effects. Even if plaintiff's had not waived their right to litigate non-housing interests, the court defers to agency expertise on questions of methodology unless the agency has completely failed to address some factor necessary to a truly informed decision on whether to prepare an EIS. *Inland Empire Public Lands Council v. Schultz,* 992 F.2d 977, 981 (9th Cir.1993). Because plaintiffs have not shown the omission of any factor necessary to an informed decision, the court defers to the agency's choices of methodology. Had plaintiffs not waived their right to litigate these issues, defendants would be entitled to summary judgment on plaintiffs' challenges to GSA's methodology.

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

In the alternative to their Motion to Dismiss, defendants move for summary judgment. They argue that they are entitled to summary judgment because GSA's decision-making process under NEPA was not arbitrary or capricious, and because the agency acted within its discretion in deciding not to prepare an EIS.

▆ Under Fed.R.Civ.P. 56(c), the entry of summary judgment is mandated when the evidence in the record shows no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1985); *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit. *T.W. Elec. Service,* 809 F.2d at 630. A genuine issue of material fact exists if there is sufficient evidence supporting the claimed factual dispute to require a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *T.W. Elec. Service,* 809 F.2d at 630.

▆ Whether a genuine issue exists with respect to a material fact is often a close

question. *T.W. Elec. Service,* 809 F.2d at 630. The initial burden is on the moving party to identify materials on file that demonstrate the absence of any genuine issue of material fact. *Id.* Once that initial burden is satisfied, the non-moving party must set forth specific facts "such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Id.* at 631.

There are no genuine issues of material fact. The differences in the facts alleged by the parties are not material to the resolution of this case. Because only issues of law remain to be decided, a decision on the motion for summary judgment is appropriate.

▆ The court reviews a federal agency's decision not to prepare an EIS under the arbitrary or capricious standard. *Inland Empire,* 992 F.2d at 980. Under this standard, the court assesses whether the agency took a "hard look" at the environmental consequences of its actions. *Id.* If the agency's discretion is informed by a reasoned evaluation of the relevant factors, the court must defer to it. *Id.* NEPA does not mandate particular results, but requires only that the agency identify and evaluate adequately the adverse environmental effects of the proposed action. *Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 350, 109 S.Ct. 1835, 1845, 104 L.Ed.2d 351 (1989).

▆ If an agency determines that an EIS is necessary, it should discuss steps that can be taken to mitigate adverse environmental consequences. *Robertson,* 490 U.S. at 351, 109 S.Ct. at 1846. NEPA does not require that mitigation measures actually be taken before the agency can act. *Robertson,* 490 U.S. at 353, 109 S.Ct. at 1847.

Plaintiffs assert that homelessness falls within the zone of interests NEPA is intended to protect, based on the policy declarations in 42 U.S.C. § 4331 and on the definition of "human environment" in 40 C.F.R. § 1508.14. Plaintiffs cast the NEPA net too broadly. NEPA requires that GSA consider the "environmental impact" of the proposed Federal Courthouse and "any adverse environmental effects which cannot be avoided" should the Courthouse be built. 42 U.S.C. § 4332(C). "Environmental" impacts and ef-

fects are more narrowly circumscribed than plaintiffs assert:

> NEPA does not require the agency to assess every impact or effect of its proposed action, but only the impact or effect on the environment. If we were to seize the word "environmental" out of its context and give it the broadest possible definition, the words "adverse environmental effects" might embrace virtually any consequence of a governmental action that someone thought "adverse." But we think the context of the statute shows that Congress was talking about the physical environment—the world around us, so to speak. NEPA was designed to promote human welfare by alerting governmental actors to the effect of their proposed actions on the physical environment. . . .

> Thus, although NEPA states its goals in sweeping terms of human health and welfare, these goals are ends that Congress has chosen to pursue by means of protecting the physical environment.

*Metropolitan Edison Co. v. People Against Nuclear Energy,* 460 U.S. 766, 772–73, 103 S.Ct. 1556, 1560, 75 L.Ed.2d 534 (1983).

■ For homelessness to fall within NEPA's zone of interests, a reduction of available low-income housing must be a change in the physical environment as defined under NEPA. Solving the problem of homelessness is an important social goal, and providing low-income housing is one strategy for addressing that problem. However, NEPA is not the proper means for achieving that goal. NEPA was not intended to provide a process for addressing social and economic shortcomings in our society, but to ensure that agencies consider the consequences of their actions on the land, air, water, and other natural resources upon which our society depends. Social and economic consequences of agency action may be considered under NEPA only if they are caused by damage to the physical environment. *Goodman Group, Inc. v. Dishroom,* 679 F.2d 182, 185 (9th Cir.1982); *Port of Astoria,* 595 F.2d at 475.

■ The remaining question is whether the demolition of buildings on the project site and the resulting reduction in Portland's available low-income housing are "natural or physical effects on the environment" resulting from the proposed Federal Courthouse. The demolition of buildings is not by itself a natural or physical effect on the environment. *Preservation Coalition, Inc. v. Pierce,* 667 F.2d 851, 857–58 (9th Cir.1982) (demolition of historic building, without more, does not produce a significant impact on the environment). Those consequences of demolition, such as noise, dust, disposal of debris, etc., that are natural or physical effects on the environment have been considered adequately in GSA's EA.

Similarly, the alleged reduction in low-income housing caused by this project is not a natural or physical effect on the environment. Like the problem of homelessness, it is a social or economic effect, that can be considered under NEPA only if caused by or intertwined with a natural or physical environmental effect. 40 C.F.R. § 1508; *Goodman Group,* 679 F.2d at 185; *Port of Astoria,* 595 F.2d at 475.

Neither the demolition of the buildings previously occupying the project site nor the alleged reduction in low-income housing is a primary effect on the natural or physical environment. Consequently, plaintiffs have identified no environmental interest with which their interest in low-income housing and the alleviation of homeless is interrelated. Because plaintiffs interests are not clearly interrelated with any primary effect on the natural or physical environment, GSA has wide discretion in deciding whether to prepare an EIS on that basis. *Goodman Group,* 679 F.2d at 185. GSA identified and took the requisite "hard look" at the environmental consequences of the proposed Federal Courthouse. GSA acted within its discretion in rejecting low-income housing and homelessness as bases on which to require preparation of an EIS. GSA's decision not to prepare an EIS was not arbitrary or capricious. Its decision was consistent with the law. Defendants' motion for summary judgment should be granted.

### CONCLUSION AND ORDER

For all of the reasons discussed above, it is now

ORDERED that defendants' Motion to Dismiss is **DENIED.** It is further

ORDERED that defendants' request for oral argument is **DENIED** and defendants' Motion for Summary Judgment is **GRANTED.** It is further

ORDERED that this matter is **DISMISSED.**