61 F.3d 909
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
COUNTY OF SAN DIEGO, a political subdivision of the State of
California, Plaintiff-Appellant,
v.
Bruce BABBITT, in his capacity as Secretary of the United
States Department of the Interior; Eddie Frank Brown, in his
official capacity as Assistant Secretary of the United
States Department of the Interior; Woodrow Hopper, in his
official capacity as Acting Commissioner of Indian Affairs,
United States Bureau of Indian Affairs; Patrick Hayes, in
his official capacity as Director, Office of Trust
Responsibilities, United States Bureau of Indian Affairs;
Ronald M. Jaeger, in his official capacity as Area Director
of the United States Bureau of Indian Affairs; Campo Band of
Mission Indians, a sovereign Indian tribal government;
Muht-Hei, Inc., a corporation owned and chartered by the
Campo Band of Mission Indians, Defendants-Appellees.
 No. 94-55548.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted JULY 11, 1995.
Decided July 25, 1995.
 
 1
 Before: FARRIS and O'SCANNLAIN, Circuit Judges, and TASHIMA,* District Judge.
 
 
 2
 MEMORANDUM**
 
 I.
 
 3
 San Diego argues that the EIS should have analyzed non-reservation landfill sites. The district court found that non-reservation sites were not reasonable because "the purpose of the Project is to provide a significant economic development opportunity for the Campo Band." On appeal, San Diego asserts that the BIA has so narrowly defined the project's purpose that it has precluded a meaningful analysis of the issue.
 
 
 4
 NEPA requires an analysis of reasonable or feasible alternatives. See Idaho Conservation League v. Mumma, 956 F.2d 1508, 1520 (9th Cir. 1992) (requiring federal agencies to consider "reasonable" alternatives). It is neither reasonable nor feasible for the Campo Band and BIA to consider alternative sites that are not on the Tribes' land. Nor did the Campo Band and BIA have to consider a land swap to acquire non-tribal land that is not above the aquifer. City of Angoon v. Hodel, 803 F.2d 1016, 1021 (9th Cir. 1986), cert. denied, 484 U.S. 870 (1987).
 
 
 5
 San Diego argues that the EIS fails to evaluate and disclose the consequences of groundwater contamination. Although the probability of contamination is slim, they contend that the consequences would be "catastrophic." The record does not support San Diego's argument. The EIS contains a reasonably thorough discussion of the probable environmental consequences. Idaho Conservation League v. Mumma, 956 F.2d 1508, 1519 (9th Cir. 1992). It states that contamination would be a "potentially significant adverse impact" and "would render water unusable for potable consumption." Further, it states that "[g]roundwater in the region is relied upon as the only source of water supply for domestic uses."
 
 
 6
 San Diego argues that the EIS did not adequately consider the landfill's effect on air quality. We only look to insure that the BIA has "considered the environmental consequences" of its action. Strycker's Bay Neighborhood Council, Inc. v. Karlen, 444 U.S. 223, 228 (1980). The EIS calculated the total amount of transportation emissions created by a new landfill at Campo. It concluded these new emissions will "not significantly impact air quality." This analysis of total emissions was sufficient, especially since the emissions will be relatively minor and will not violate air emissions standards.
 
 
 7
 Finally, San Diego asserts that the EIS does not contain reasonably complete or feasible mitigation measures in the event of groundwater contamination. After carefully reviewing the record, we conclude that the mitigation measures are satisfactory. For example, the landfill containment system will exceed federal, tribal, and California regulatory requirements for solid waste landfills. This includes an eight foot cover on top of the landfill and a double liner system on the bottom. The double liner system will satisfy federal regulations for hazardous waste landfills. The BIA correctly stated that these preventative measures qualify as mitigation. The EIS identifies five other future mitigation measures if the liner system were to leak. These include eliminating the source of the leachate and repairing the liner, pumping the contaminated groundwater, reinjection to channel the contamination and enhance pumping, using a grout curtain, and deepening existing wells. The ROD requires that a full mitigation and monitoring plan be in place before the project is permitted to operate.
 
 
 8
 San Diego also argues that the landfill's monitoring program was not based on "accurate scientific analysis." See 40 C.F.R. Sec. 1500.1(b) (stating that "[a]ccurate scientific analysis, expert agency comments, and public scrutiny are essential to implementing NEPA"). San Diego cites expert testimony questioning the BIA's conclusion that the groundwater can be effectively monitored. The BIA relied on their own experts to conclude that the groundwater could be monitored. A disagreement among experts does not invalidate an EIS. Havasupai Tribe v. Robertson, 943 F.2d 32, 34 (9th Cir. 1991), cert. denied, 503 U.S. 959 (1992). Courts defer to agency expertise on methodology issues "unless the agency has completely failed to address some factor." Inland Empire Public Lands Council v. Schultz, 992 F.2d 977, 981 (9th Cir. 1993).
 
 II.
 
 9
 San Diego asserts that the public did not have an opportunity to propose and consider other economically viable alternatives because the EIS did not disclose financial information contained in leases between the Campo Band, Muht-Hei, and Mid-American Waste Systems. We reject the argument. The EIS discussed possible alternatives such as gambling operations, increased sand mining, increased cattle grazing, fish farming, an RV park. It considered and dismissed these alternatives because they did not satisfy the Tribes' economic goals. An EIS need only set forth "those alternatives necessary to permit a reasoned choice." Headwaters, Inc. v. Bureau of Land Management, 914 F.2d 1174, 1180 (9th Cir. 1990). San Diego did not need the financial information to propose other alternatives that would have satisfied the Tribes' economic goals.
 
 III.
 
 10
 San Diego asserts that the district court refused to consider pertinent evidence outside the administrative record. Specifically, they contend that the court should have considered 1) the EPA's determination that the aquifer is the region's only source of drinking water, 2) the evidence showing that the EIS downplays and ignores potential groundwater harm, and 3) the existence of unexamined but reasonable alternatives. Judicial review of agency action generally is limited to the administrative record. Friends of Earth v. Hintz, 800 F.2d 822, 828 (9th Cir. 1986). A court may consider evidence outside the administrative record if it is necessary to explain agency action, id. at 829, if an EIS has failed to mention or inadequately explored a serious environmental consequence, Animal Defense Council v. Hodel, 840 F.2d 1432, 1436-37 (9th Cir. 1988), or if it appears that the agency has relied on documents or materials not in the record, Public Power council v. Johnson, 674 F.2d 791, 794-95 (9th Cir. 1982).
 
 
 11
 San Diego has not shown that the information outside the record satisfies any of these exceptions. Although San Diego contends that the EIS inadequately considers the effect of groundwater contamination, the EIS specifically states that "groundwater in the region is relied upon as the only source of water supply for domestic uses." The landfill is designed to virtually eliminate the likelihood of contamination because protection of the aquifer is a vital concern. Further, the EIS need not analyze other non-reservation alternatives.
 
 
 12
 AFFIRMED.
 
 
 
 *
 Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3